**Application of Andrew T. BOVA et al., Appellants,**

**v.**

**UNITED STATES of America, Appellee.**

**No. 793, Docket 72–1367.**

United States Court of Appeals, Second Circuit.

Argued April 11 and 13, 1972.

Decided April 28, 1972.

Salten Rodenberg, Buffalo, N. Y., for appellants.

Robert C. Stewart, Atty., U. S. Dept. of Justice (C. Donald O'Conner, Acting U. S. Atty., W. D. N. Y., and Martin D. Boudreau, Atty., U. S. Dept. of Justice, of counsel), for appellee.

Before FRIENDLY, Chief Judge, and SMITH and OAKES, Circuit Judges.

FRIENDLY, Chief Judge:

By two orders in the spring of 1971, pursuant to 18 U.S.C. § 2518(3), the District Court for the Western District of New York authorized the tapping of certain telephones, not on premises occupied by the appellants, Bova, Carbone and Divizio (hereinafter "the witnesses"), on the basis of applications by the United States showing probable cause to believe that the premises were being used for the conduct of a gambling business prohibited by 18 U.S.C. § 1955. The taps yielded, among other things, conversations of the three appellants. They were later subpoenaed to testify before a grand jury, the Government conceding that most of the questions to be asked were the fruit of the wiretaps. They moved for suppression, under 18 U.S.C. § 2518(10) (a), on grounds hereafter stated. In consequence of various delays unnecessary to detail, the motions remained undecided when the grand jury returned an indictment in United States v. Joseph M. Fino, et al., Cr. 1971–143, against nine defendants, none of whom were the witnesses—although the latter were named as co-conspira-

tors. Subsequently, without ruling on the suppression motions, Judge Curtin granted the Government's request for transactional immunity, see 18 U.S.C. § 2514, for each of the witnesses in order to protect their Fifth Amendment rights, and directed them to testify before the grand jury, which was still sitting. The witnesses nonetheless refused to answer any questions, asserting their right of privacy under the Fourth Amendment, and the Government made application to Judge Curtin for a contempt order. Before the application could be decided, the Government requested that the suppression motions be transferred to Chief Judge Henderson, who was to preside at the *Fino* trial, which ultimately was scheduled to begin on April 11, 1972. The request was granted,[1] and the contempt application was formally dismissed. Before final argument to Judge Henderson on the suppression motions, the witnesses were served with trial subpoenas. Many objections to the wiretaps were advanced —that one of the interception orders had not been properly limited; that, because of use of the preposition "from," the other order authorized only the in-

terception of outgoing calls whereas the witnesses' were incoming; that the procedures within the Department of Justice for processing the applications were defective for lack of personal participation by any officer specifically authorized by Congress;[2] and that the affidavits on which the orders were made were insufficient insofar as they relied on the presumption with respect to probable cause created by 18 U.S.C. § 1955(c), which was alleged to be unconstitutional. Chief Judge Henderson overruled all these objections in an opinion dated April 4, 1972.[3]

The witnesses promptly filed a notice of appeal and moved for an expedited hearing and an interim order restraining the United States Attorney from directing any, questions to them based upon intercepted telephone conversations should they be called to testify at the *Fino* trial. The Government countered with a motion to dismiss for lack of appellate jurisdiction. On hearing our motion calendar on April 11, we deferred ruling on the Government's motion, set the appeal for argument on April 13, and requested the Government to refrain from calling the witnesses or otherwise

---

1. Before the transfer the Government waived the question of the witnesses' standing to move to suppress so far as concerned the hearing in the district court. Although it expressed its desire to preserve the issue if the matter should ultimately be appealed, it has not raised the point here. The Government, which had initially challenged the witnesses' standing, made the concession below apparently because it considered the witnesses' testimony essential to the trial of the *Fino* indictment and did not wish to incur the lengthy delay of that trial which full litigation of the witnesses' standing might well have entailed. At least in part, the Government's fear of litigious delay was undoubtedly based on the fact that 18 U.S.C. § 2518(10) (a) refers to "Any aggrieved person in any trial . . . in or before any court . . . of the United States," although not to a witness summoned to appear before a grand jury—an omission which has forced judges of the courts of appeals to spill a considerable amount of ink, with varying results and rationales. See Dud-

ley v. United States, 427 F.2d 1140 (5 Cir. 1970) ; United States v. Gelbard, 443 F.2d 837 (9 Cir.), cert. granted, 404 U.S. 990, 92 S.Ct. 529, 30 L.Ed.2d 540 (1971) ; In re Bacon, 446 F.2d 667, 668 (9 Cir. 1970) ; In re Egan, 450 F.2d 199 (3 Cir.) (en banc), cert. granted sub nom. United States v. Egan, 404 U.S. 990, 92 S.Ct. 531, 30 L.Ed.2d 531 (1971) ; In re Evans, 452 F.2d 1239 (D.C.Cir. 1971), cert. filed sub nom. United States v. Evans, 40 U.S.L.W. 3091 (U.S. Aug. 20, 1971) (No. 71–256) ; *cf.* Carter v. United States, 417 F.2d 384, 388 (9 Cir. 1969), cert. denied 399 U.S. 935, 90 S.Ct. 2253, 26 L.Ed.2d 807 (1970).

2. This objection fell by the wayside in light of the district court's finding that each application was personally approved by former Attorney General Mitchell. Compare United States v. Pisacano, 459 F.2d 259 (2 Cir. 1972).

3. The judge found it unnecessary to consider the constitutionality of the presumption since the affidavits showed probable cause.

developing the intercepted conversations until that time. Further study convinced us that the motion to dismiss should be granted. On April 13 we directed entry of an order to that effect and announced that an opinion would be filed as soon as practicable.

█ Insofar as appellants' grievance relates to the subpoenas requiring them *to testify*, the want of the finality essential to appealability under 28 U.S.C. § 1291 has been settled since Alexander v. United States, 201 U.S. 117, 26 S.Ct. 356, 50 L.Ed. 686 (1906). Requisite finality is not attained until the witness refuses to respond to the subpoena and the court asserts its authority to enforce compliance by way of a contempt order. The Supreme Court has not manifested the slightest tendency to relax *Alexander*. Rather it has extended the ruling to refusal to quash subpoenas to witnesses summoned to produce documents before a grand jury, Cobbledick v. United States, 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783 (1940), and to denial of a motion to suppress the evidentiary use of material alleged to have been illegally seized, even though the motion preceded indictment, Di Bella v. United States, 369 U.S. 121, 82 S.Ct. 654, 7 L.Ed.2d 614 (1962), or was made in a district other than that of indictment, United States v. Koenig, *id.* Save as modified by statute to permit appeals by the Government in

certain instances,[4] this doctrine has remained in full effect but for one judicially recognized exception of uncertain scope. This is where, as said in Carroll v. United States, 354 U.S. 394, 404 and n. 17, 77 S.Ct. 1332, 1338, 1 L.Ed.2d 1442 (1957), "the emphasis is *on the return of property* rather than its suppression as evidence." (Italics in original). The bounds of the exception are illustrated, although not much illumined, by such cases as Perlman v. United States, 247 U.S. 7, 12–13, 38 S.Ct. 417, 62 L.Ed. 950 (1918), and Burdeau v. McDowell, 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048 (1921).[5]

In *Di Bella* the Court stiffened the phraseology that had been used in *Carroll*, saying: "Only if the motion is solely for return of property and is in no way tied to a criminal prosecution *in esse* against the movant can the proceedings be regarded as independent." 369 U.S. at 131–132, 82 S.Ct. at 660 (citations omitted). In its most recent expression enforcing the *Alexander-Cobbledick-Carroll-Di Bella* rule, the Court spoke somewhat more generally, "Only in the limited class of cases where denial of immediate review would render impossible any review whatsoever of an individual's claims have we allowed exceptions to this principle," United States v. Ryan, 402 U.S. 530, 533, 91 S.Ct. 1580, 1582, 29 L.Ed.2d 85 (1971). However,

---

4. *E. g.*, former 18 U.S.C. § 1404 (limited right of Government to appeal orders granting suppression in narcotics cases), repealed by Pub.L.No. 91–513, title III, § 1101(b) (1) (A), 84 Stat. 1292; the broader provision concerning Government appeal of suppression orders embodied in the second paragraph of 18 U.S.C. § 3731, added by Pub.L.No. 90–351, title VIII, § 1301, 82 Stat. 237–38, and amended by Pub.L.No. 91–644, title III, § 14(a) (1), 84 Stat. 1890; and 18 U.S.C. § 2518(10) (b), discussed below.

5. The American Law Institute's Model Code of Pre-Arraignment Procedure, Tent. Draft No. 3 (April 1970) § SS 7.03 at 89–90, notes that existing statutes and rules—one might legitimately add decisions—have failed adequately to discriminate between proceedings for suppression

of evidentiary use and for the return of seized things. The grounds justifying one type of relief are not necessarily grounds for the other. For example, when the seizure is of contraband, the owner is not entitled to return even though the seizure was illegal. *Per contra* goods not in the nature of contraband, which were legally seized, should be returned when their evidentiary utility is exhausted. The Code proposes that in granting a motion for return the court may postpone delivery until such time as the seized things are no longer needed for evidentiary use, § SS 7.03(3), and that orders granting or denying return shall be reviewable except that where the order denies return, it shall be reviewable only upon certification that the seized things are no longer needed for evidentiary purposes, § SS 7.03(4).

it gave as examples only the hypothetical case put in *Di Bella* and a reference to *Perlman*.

Appellants' argument why their appeal comes within the exception begins with the premise that, in contrast to the cases we have summarized, the Government very likely is not dependent on their testimony to prove the contents of the intercepted conversations. The Government may bypass contempt proceedings and call the agents who conducted the interceptions to testify as to the substance of appellants' conversations. The agents' recollections will be supported by tapes and logs. Such testimony will be admissible, for example, if, as often occurs in gambling prosecutions, the conversations are not within the hearsay rule, see United States v. Costello, 352 F.2d 848, 853–855 (2 Cir. 1965), rev'd on another ground sub nom. Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968), or come within the exception for declarations in furtherance of a conspiracy. Hence, appellants say, a holding of unappealability will mean that information damaging to their personal lives will have been publicly revealed and the right of privacy guaranteed them by the Fourth Amendment will have been irreparably invaded without opportunity for appellate review of the decision sustaining the wiretap orders.

If the exception to the *Alexander-Cobbledick-Carroll-Di Bella* line of cases relates only to the return of property, appellants' argument clearly fails. Telephone conversations are not "property" in the ordinary meaning of language, nor is there any effective method for their "return." It is obviously impossible to excise and surrender to the appellants the memories of the agents who conducted the interceptions, and the tapes and logs, as tangible items, are the Government's property, not the appelants'. None of the dissenters in Olmstead v. United States, 277 U.S. 438, 48

S.Ct. 564, 72 L.Ed. 944 (1928), asserted that telephone conversations were property; the three Justices who held the Fourth Amendment to be applicable to wiretaps argued rather that the Amendment protected against the Government's intercepting private oral communications as fully as it did against the seizure of property. See, *e. g.,* dissenting opinion of Mr. Justice Brandeis, 277 U. S. at 473–474, 478, 48 S.Ct. 564; dissenting opinion of Mr. Justice Butler, 277 U.S. at 487–488, 48 S.Ct. 564. And it was on that ground that *Olmstead* was overruled in Katz v. United States, 389 U.S. 347, 351–353, 88 S.Ct. 507, 19 L. Ed.2d 576 (1967).

We do not believe that the statement quoted from United States v. Ryan, *supra,* 402 U.S. at 533, 91 S.Ct. 1580, a decision which held the denial of relief there at issue to be unappealable, was intended to broaden the exception previously recognized.[6] However this may be, our task is the limited one of determining the appealability of an order denying relief under a statute enacted by Congress three years before *Ryan.* When Congress enacted 18 U.S.C. § 2518 as part of Title III of the Omnibus Crime Control and Safe Streets Act of 1968, it thus could properly have assumed that the statements in *Carroll* and *Di Bella* marked the limits of cases wherein persons authorized to move for suppression under § 2518(10) (a) would be permitted to appeal from an order of denial. Compare Alderman v. United States, 394 U.S. 165, 175 n. 9, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969). The statute shows that the legislators specifically focused on the problem of appealability; in § 2518(10) (b) they conferred on the Government a limited right to appeal from orders granting suppression. Yet neither the statute nor the legislative history, see S.Rep.No.1097, 90th Cong., 2d Sess. 107 (1968), reprinted in U.S. Code Cong. & Adm.News pp. 2112, 2196, contain any indication that they intend-

---

6. Apparently it did rescue *Perlman* from what might have been deemed an expression of disapproval in *Di Bella, supra,* 369

U.S. at 124 & n. 2, 82 S.Ct. 654, 7 L.Ed. 2d 614.

ed to alter pre-existing principles of appealability with respect to orders denying suppression. Under these circumstances, the inference that Congress did not intend to confer a right to appeal on the unsuccessful movant is strong. It is heightened by the provision for victims of unlawful interceptions of a qualified right to recovery of civil damages, 18 U.S.C. § 2520, "[h]istorically . . . the ordinary remedy for an invasion of personal interests in liberty," Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 395–396, 91 S.Ct. 1999, 2004, 29 L.Ed.2d 619 (1971) (citations omitted).

■ To be sure, damages, even the liquidated and punitive damages provided by § 2520, are far from being a perfect remedy for improper revelation of telephone conversations, especially when, as stated in the final sentence of that section, "A good faith reliance on a court order or legislative authorization shall constitute a complete defense to any civil or criminal action . . . ." But Congress did not leave persons like appellants with the damage remedy alone. It interposed between the interception and the revelation the power of the district judge. This is no niggardly measure of protection. As said in *Cobbledick, supra,* 309 U.S. at 325, 60 S.Ct. at 541, "the right to a judgment from more than one court is a matter of grace and not a necessary ingredient of justice . . . ." The Court also noted in *Carroll, supra,* 354 U.S. at 406, 77 S.Ct. at 1339, that "[m]any interlocutory decisions of a trial court may be of grave importance to a litigant, yet are not amenable to appeal at the time entered, and some are never satisfactorily re-

viewable." See also In re Grand Jury Investigation of Violations of 18 U.S.C. § 1621 (Perjury), 318 F.2d 533, 538 (2 Cir.), cert. dismissed under Rule 60, 375 U.S. 802, 84 S.Ct. 25, 11 L.Ed.2d 37 (1963). Indeed, public disclosure of arguably damaging private materials as a result of the unavailability of an immediate appeal of a trial court order denying suppression or return—an order which ultimately is reversed on appeal —is not a new phenomenon. See Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914). On balance, Congress must have realized, particularly in light of the Supreme Court's teachings in the cases cited, that to allow witnesses like the appellants to appeal from the denial of suppression motions, with the almost inevitable concomitant of an attempt to secure Supreme Court review of an affirmance, together with a stay of all relevant proceedings pending final Court action, would intolerably delay criminal trials.[7] *Cf.* Cobbledick v. United States, *supra,* 309 U.S. at 325–326, 60 S.Ct. 540, 84 L.Ed. 783. Presumably, Congress was as cognizant as appellants that, in many cases, the Government would have ways and means to establish the content of intercepted conversations other than by proceedings for contempt. In the face of this and with knowledge of the body of learning as to the unappealability of orders denying suppression, Congress provided some rights of appeal for the Government when the motion was granted but none for the movants when it was denied. We would be contravening the will of Congress if we were to yield to appellants here.

The appeal is dismissed for lack of appellate jurisdiction.

7. It is indicative of Congress' concern over the delay which piecemeal appeal can entail for the criminal process that as a prerequisite to Government appeal under 18 U.S.C. § 2518(10) (b), the United States Attorney must "certify . . . that the appeal is not taken for purposes of delay."

Appellants say that any delay of the *Fino* trial which this appeal might cause would be the fault of the Government in not proceeding with the motions made while they were potential grand jury witnesses. But, apart from the question of standing at that stage, see fn. 1, *supra,* this would simply have transposed the delay had the Government deemed it essential that the witnesses testify before the grand jury. Moreover, no matter how diligent movants may have been in seasonably raising the issue, hard-pressed district courts may often be unable to get to suppression motions until shortly before trial.