UNITED STATES of America,
Plaintiff-Appellee,

v.

Allen M. DORFMAN, et al.,
Defendants. (Two cases).

Appeal of David DORFMAN, et al.

Appeal of William E. WEBBE.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Allen M. DORFMAN, et al.,
Defendants-Appellants.

Nos. 82–2083, 82–2084 and 82–2209.

United States Court of Appeals,
Seventh Circuit.

Submitted Aug. 20, 1982.

Decided Sept. 2, 1982.

Roller, Chicago Strike Force, Chicago, Ill., for plaintiff-appellee.

Theodore A. Sinars, Harris, Burman, Sinars & Jiganti, Edward L. Foote, Winston & Strawn, George J. Cotsirilos, Cotsirilos & Crowley, Chicago, Ill., Thomas A. Wadden, Jr., William F. Krebs, Scherr, Krebs & Gitner, Washington, D. C., for defendants.

Lawrence Gunnels, Reuben & Proctor, Chicago, Ill., for intervenor.

Before CUMMINGS, Chief Judge, and PELL and BAUER, Circuit Judges.

CUMMINGS, Chief Judge.

These are consolidated appeals from three separate orders denying motions to suppress filed in connection with the government prosecution in *United States v. Allen Dorfman.* For the reasons stated below, we dismiss appeal No. 82–2209 for want of jurisdiction and affirm the orders of the district court in the remaining two appeals.

## I.  Factual Background

The five defendants in the underlying district court case [1] are charged in an eleven-count indictment with conspiracy to bribe a United States senator in violation of 18 U.S.C. §§ 201(b)(1), 371 (1976), travel in interstate commerce with intent to commit bribery in violation of 18 U.S.C. § 1952 (1976), and nine separate counts of wire fraud and attempting to obtain money and property by means of false pretenses in violation of 18 U.S.C. § 1343 (1976).  The indictment is partly the product of extensive electronic surveillance conducted under the authority of Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–2520 ("Title III").  On January 29, 1979 the Federal Bureau of Investigation received authorization under Title III to place a wiretap on telephones at Amalgamated Insurance Agency Services in Chicago and to intercept telephone conversations of Allen Dorfman and five other

William C. Bryson, U. S. Dept. of Justice, Crim. Div., Washington, D. C., Douglas P.

---

1. Allen M. Dorfman, Roy L. Williams, Joseph    Lombardo, Amos Massa and Thomas O'Malley.

named persons. The wiretaps continued for fourteen months pursuant to successive extensions of the original wiretap authorization. The surveillance produced more than 2,000 reels of recordings. The conversations of hundreds of persons were intercepted besides the five individuals charged in the indictment. *United States v. Dorfman,* 542 F.Supp. 345, 356–57, 370 (N.D.Ill.1982).

On January 12 and 13, 1982 the defendants filed motions to suppress the material obtained by the court-authorized electronic surveillance. The defendants contended that such interception violated Title III. The district court held suppression hearings in March and April of 1982,[2] and denied the motions in a lengthy memorandum opinion dated June 1, 1982, 542 F.Supp. 345.[3] On July 13, 1982 the district court denied the defendants' motion for reconsideration. The defendants have appealed.

In addition to the defendants' appeal, two related appeals are pending before this Court. The first appeal has been taken by five persons whose conversations were intercepted but who have not been charged in

the indictment.[4] Following entry of the district court's June 1 order denying defendants' motions to suppress, these persons filed a motion to suppress those intercepted conversations in which they participated and to obtain access to the transcripts of those intercepted conversations. The government objected to the nonparties' standing to raise the suppression questions. The government also filed a statement indicating its intent to introduce at trial certain conversations of four of the movants in its case in chief.[5] The government also asserted in open court that none of the movants would be called as government witnesses at trial. On June 23 the district court denied any document disclosure to the movants, and denied the request for suppression, reasoning:

> The fourth amendment exclusionary rule does not extend to a person against whom no evidence is offered. "No rights of the victim of an illegal search are at stake when the evidence is offered against some other party." *Alderman v. United States,* 394 U.S. 165, 174 [89 S.Ct. 961, 967, 22 L.Ed.2d 176] (1969). Assuming

---

2. The defendants earlier appealed the district court's oral ruling denying defendants' request for complete closure to the public of the suppression hearing. This Court accepted jurisdiction over the appeal, reasoning that the "denial of defendants' motion is in the nature of denial of an injunction because the motion was grounded in the defendants' substantive right of privacy under Title III." The Court nonetheless affirmed the district court order on the ground that the district court judge did not abuse the broad discretion accorded him in "balancing the competing values at stake" and in fashioning, if necessary, a remedy less restrictive than complete closure of the hearing. *United States v. Dorfman,* No. 82–1462, slip op. at 3 (7th Cir. Mar. 25, 1982).

3. In its opinion the district court held: (1) that the government's original wiretap application and subsequent applications for extensions each recited facts sufficient to establish probable cause on which the authorizing judge could warrant surveillance, see 18 U.S.C. § 2518(3); (2) that the defendants failed to demonstrate that the government's applications were made in bad faith under the rule of *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978); and (3) that the government's ap-

plications and the court's authorization orders complied with the relevant provisions of Title III, *inter alia,* the particularity requirements of § 2518(1)(b) and (4)(c), the minimization requirement of § 2518(5), the disclosure requirement of § 2518(1)(e), the necessity requirement of § 2518(1)(c), and the permission for use requirement of § 2517(5).

4. David Dorfman, Sol Schwartz, Morris Weiser, Morton J. Harris and Ira M. Burman. Sol Schwartz was named in the January 29 authorization and David Dorfman was named in the second authorization order.

5. In particular the government advised the nonparty movants that it intended to offer the following conversations:
   1) David Dorfman—conversations between him and certain defendants and between him and other non-indicted parties; and
   2) Messrs. Schwartz, Harris and Burman—conversations between each and certain defendants.

   The government does not intend to offer any of the conversations involving Morris Weiser in the case in chief.

arguendo that non-parties are "aggrieved persons" within the meaning of 18 U.S.C. § 2518(10) (Supp. II 1978), nevertheless Title III does not grant a suppression remedy broader than that encompassed in general fourth amendment law. *See United States v. Dorfman*, 542 F.Supp. 345, 377 (citing *Scott v. United States*, 436 U.S. 128, 139 [98 S.Ct. 1717, 1724 n.30, 56 L.Ed.2d 168] (1978)).

While a non-party may be able to prevent disclosure of intercepted conversations, *see Anthony v. United States*, 667 F.2d 870 (10th Cir. 1981); 18 U.S.C. §§ 2215, 2517, a question we do not now decide, he cannot prevent the admission of intercepted conversations against defendants in a criminal case. Non-parties' motions to suppress are therefore denied.

The five nonparties appealed.[6]

The second related appeal has been filed by William E. Webbe, from the district court's order denying his motion to suppress conversations in which he was a party. Webbe, named in the indictment as an unindicted co-conspirator, was subpoenaed before the grand jury, given immunity and did testify. Webbe has been subpoenaed as a trial witness and presumably will testify at that time pursuant to a grant of immunity. Six days after the entry of the order denying the nonparties' motion to suppress, Webbe filed his own motion to suppress all conversations in which he was a party and all evidence obtained as a result of the intercepted conversations. The district court granted Webbe access to the transcripts and tapes of conversations in which Webbe was a participant and which the government intends to play at the trial, but subsequently denied the motion to suppress in a brief opinion that the court read into the record on July 1.

The district court relied on four rationales to deny Webbe's motion. First, the court rejected Webbe's argument that because Webbe will be a trial witness he has a separate right to a separate adjudication of the lawfulness of the wiretaps as to him. The trial court concluded that Webbe was fully aware of the extensive evidentiary hearings held in March and April on the defendants' motions to suppress, but chose not to participate, thus raising a "classic case for the application of the common law doctrine of laches." Second, the trial court noted that Webbe challenged the lawfulness of the wiretaps before Chief Judge Parsons at the time he was compelled to testify before the grand jury. At that time Webbe did not challenge through contempt proceedings Chief Judge Parsons' ruling on the lawfulness of the surveillance. The district court concluded that Webbe was not entitled to relitigate the issue in a suppression hearing. Third, the district court ruled that because Webbe was not a named interceptee on the January 29, 1979 authorization order he lacked standing to challenge its facial validity; and, further, because the evidence will be introduced against defendants and not him, he lacks standing to seek its suppression. Finally, on the assumption that the preceding reasons might be insufficient justification to deny the motion to suppress, the district court addressed the merits of Webbe's motion and concluded that the request for suppression must be denied for the reasons stated in the earlier decision of June 1, 1982 entered with respect to the defendants' motions to suppress.[7] (*United States v. Dorfman*, 542 F.Supp. 345, Transcript of Proceedings, July 1, 1982).

## II. The Defendants' Appeal

For purposes of the present discussion we treat separately the appeals of defendants

---

**6.** The district court also denied Harris and Burman's request for suppression on the ground that the subject matter of their conversations with defendants was covered by the attorney/client privilege. The district court correctly reasoned that the privilege is the defendant-client's and may be asserted by him in an *in* *limine* proceeding to exclude the relevant conversations once the government attempts to have them admitted into evidence.

**7.** See note 3, *supra*, for a discussion of the June 1 order.

and nondefendants. We turn first to the arguments raised on the appeal taken by the defendants from the June 1, 1982 order denying their motions to suppress. We conclude that the appeal has been taken from a nonfinal and nonappealable order and therefore must be dismissed.

■ A long line of cases clearly establishes that a defendant may not take an interlocutory appeal from an order denying a motion to suppress evidence. *E.g., Di Bella v. United States*, 369 U.S. 121, 131, 82 S.Ct. 654, 660, 7 L.Ed.2d 614 (1962); *Cogen v. United States*, 278 U.S. 221, 223, 49 S.Ct. 118, 119, 73 L.Ed. 275 (1929). Such orders are not final and appealable until judgment has been entered on the verdict.

■ We cannot agree with the defendants that the rules forbidding interlocutory appeal differ when an appeal is filed challenging a ruling entered under Title III. Defendants argue that unless an interlocutory appeal of the suppression order is permitted, their privacy rights in the intercepted conversations will be impaired irremediably once the conversations have been disclosed to the public at trial. *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Under the "collateral order" doctrine of *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528 (1940) and *Abney v. United States*, 431 U.S. 651, 657–62, 97 S.Ct. 2034, 2039–41, 52 L.Ed.2d 651 (1977), certain interlocutory orders "in a small class of cases" may be appealed immediately when important rights are threatened with irreparable harm. To be appealable an order must satisfy a three-pronged test. The order (1) must be conclusive; (2) must be collateral; and (3) must "involve an important right which would be 'lost probably irreparably,'" if review had to await final judgment." *Abney v. United States, supra*, 431 U.S. at 658, 97 S.Ct. at 2039. Vigilance is particularly necessary in connection with invitations to expand the "collateral order" doctrine in criminal cases,

lest we find that we are reviewing more "collateral" than "final" orders. *Borden Co. v. Sylk*, 410 F.2d 843, 845–46 (3rd Cir. 1969).

■ We might agree that the district court's denial of suppression conclusively adjudicated the defendants' rights to suppress the electronic surveillance under Title III, but we are not convinced that the ruling is "collateral" to the final judgment to be entered on the verdict or that the privacy rights of the defendants that might be infringed when the tapes are played at trial are so extensive that review of the suppression order ought not "be deferred until the case as a whole is adjudicated." *Cohen v. Beneficial Industrial Loan Corp., supra*, 337 U.S. at 546, 69 S.Ct. at 1225. As the government has noted, other courts to address this question have held that the rules governing the appealability of orders denying the suppression of the products of electronic surveillance are the same as those applying to orders denying the suppression of other types of illegally seized evidence. *Bova v. United States*, 460 F.2d 404, 408 (2d Cir. 1972); *In re Rom*, 459 F.2d 15, 16 (3rd Cir. 1972); *In re Horn*, 458 F.2d 468, 470 n.6 (3rd Cir. 1972); *United States v. Smith*, 463 F.2d 710, 712 (10th Cir. 1972); *Application of United States*, 427 F.2d 1140, 1141–42 (5th Cir. 1970). This conclusion is supported by the treatment of interlocutory appeals by the draftsmen of Title III who codified existing case law and did provide expressly for interlocutory appeals taken by the government. 18 U.S.C. § 2518(10)(b). As the Second Circuit stated with respect to a defendant's attempt to appeal the denial of a motion to suppress:

> The statute shows that the legislators specifically focused on the problem of appealability.... Yet neither the statute nor the legislative history, see S.Rep.No. 1097, 90th Cong.2d Sess. 107 (1968), reprinted in U.S.Code Cong. & Ad.News pp. 2112, 2196, contain any indication that they intended to alter pre-existing principles of appealability with respect to orders denying suppression.

*Bova v. United States, supra,* 460 F.2d at 407–408. In sum, we conclude that Congress did provide some rights of interlocutory appeal for the government but none for the defendant-movant.

For similar reasons we also reject the defendants' claim that the denial of their motions to suppress can be viewed as tantamount to the denial of an injunction that is appealable as of right under 28 U.S.C. § 1292(a)(1). By virtue of Section 1292(a)(1) the courts of appeals have jurisdiction from "interlocutory orders of district courts . . . granting, continuing, modifying, refusing or · dissolving injunctions. . . ." Section 1292(a)(1) is a major source of interlocutory appeals but "many orders that compel or restrain conduct are nothing more than exercises of the district court's power to control the proceedings before it; they are not injunctions, even though they are cast in injunctive terms." 9 Moore's Federal Practice ¶ 110.19[1], at 207–208 (2d ed. 1982). If defendants were correct in their argument on the injunctive effect of the suppression orders, the policy against pretrial appeals on suppression issues in criminal appeals would be "sidestepped." *Smith v. United States,* 377 F.2d 739, 742 (3d Cir. 1967); *Parrish v. United States,* 376 F.2d 601, 603 (4th Cir. 1967); *In re Grand Jury Investigation of Violations (General Motors Corporation),* 318 F.2d 533, 536 (2d Cir.), *cert. dismissed,* 375 U.S. 802, 84 S.Ct. 25, 11 L.Ed.2d 37 (1963) ("The Supreme Court scarcely intended that the important policy pronouncements in *Cobbledick* and *Di Bella* could be side-stepped by baptizing . . . a motion to suppress as one for an injunction restraining the use of evidence and mandating its return. . . ."). Furthermore, although this Court earlier ruled that an order declining to close the suppression hearing was appealable as an injunction,[8] the ruling is not the "law of the case" and is not dispositive of the question now presented. The appealability of an order pertaining to the public's right of access to judicial proceedings does not determine the question of the appealability of an order on the suppression of evidence. *E.g., United States v. Hoffa,* 402 F.2d 380, 387 (7th Cir. 1968).

■ Because we conclude that the suppression order is not final and appealable in its own right[9] and is not the appropriate subject for application of *Cohen* and *Abney,* the appeal of the defendants must be dismissed. For similar reasons we also deny defendants-appellants' motion to intervene in the appeals of the nondefendants. Because the ability of the defendants and nondefendants to protect their respective privacy interests arguably are not the same and because the legal questions raised by the two sets of appellants in this case—defendants and nonparty interceptees—are not the same, we cannot agree that the interlocutory review of one set of interests compels the simultaneous review of the other. It is true that third parties have been given the right to intervene in criminal cases, but to permit defendants to intervene in this case unnecessarily would circumvent the rule against the interlocutory appeal of suppression orders. Further, as discussed below, this Court addresses only the question of standing raised by the nondefendants' motions to suppress and not the question of the legality of the wiretaps. It is only with respect to the latter question that defendants' intimate familiarity with the actual wiretap materials would militate in favor of their participation in the appeals.

### III. The Nonparties' Appeals

The two appeals of the nondefendants raise at least three distinct but interrelated questions: (1) did the district court grossly

---

8. See note 2, *supra.*

9. Because suppression orders entered against defendants are not final orders, we need not address appellee's argument that the defend-ants' appeal was untimely filed. Appellee's Brief at 8–9; Defendants-Appellants' Reply Brief at 3–4.

abuse its discretion when entering the June 23, 1982 and July 1, 1982 orders so that the orders are reviewable by mandamus? (2) are the June 23, 1982 and July 1, 1982 suppression orders of the district court properly appealable under the *Cohen* doctrine? and (3) did the district court err in concluding that the nondefendants do not have standing to object to the use of the intercepted conversations in which they were a party? Each of these questions will be addressed in turn.

### A. Mandamus

Nonparty appellants seek issuance of a writ of mandamus directing Judge Marshall to vacate his pretrial orders on suppression. We are unpersuaded by the arguments advanced by petitioners in support of the writ and accordingly deny the petition.

The jurisdictional prerequisite to the invocation of the writ of mandamus by federal appellate courts traditionally has been "to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so." *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 26, 63 S.Ct. 938, 941, 87 L.Ed. 1185 (1943). This Court has repeatedly emphasized its reluctance to resort to the extraordinary remedy of mandamus, having reserved it for the most exceptional cases. *Atlass v. Miner*, 265 F.2d 312, 313 (7th Cir. 1959).

Petitions for mandamus issue under the terms of the Judicial Code pursuant to the All Writs Act. The Act requires the issuing court to conclude that the writ is "in aid of [the issuing court's] respective jurisdiction" and that the issuance is "agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). In accordance with the first clause of the Act, mandamus has been restricted to those situations in which the lower court has taken an action which it has no power to take or when the court has acted and so abused its discretion that there is a sort of "usurpation of power" which will justify the entry of the writ. *De Beers*

*Consol. Mines Ltd. v. United States*, 325 U.S. 212, 217, 65 S.Ct. 1130, 1133, 89 L.Ed. 1566 (1945). No extraordinary writ will correct reversible error, nor may it be used to thwart the congressional policy against piecemeal appeals. *Roche v. Evaporated Milk Ass'n, supra*, 319 U.S. at 26, 63 S.Ct. at 941. The second clause of the Act specifies that the writ may issue only when "agreeable to usages and principles of law," a clause that counsels appellate courts to exercise their power only when issues of general importance are presented.

In the instant case, the district court did not rule on any matters outside its jurisdiction, and mandamus will not lie to control the judicial discretion of the judge or court. *Will v. Calvert Fire Ins. Co.*, 437 U.S. 655, 98 S.Ct. 2552, 57 L.Ed.2d 504 (1978). In addition, the nonparty appellants have an adequate appellate remedy as discussed in the following section where we accept interlocutory review of the district court's ruling on standing. It is settled that a party seeking a writ of mandamus bears the burden of showing that his right to relief is clear and indisputable. *Bankers Life & Casualty Co. v. Holland*, 346 U.S. 379, 74 S.Ct. 145, 98 L.Ed. 106 (1953). We conclude that petitioners have not met their burden and accordingly the writ must be denied.

### B. Interlocutory Appeal Under *Cohen* and *Abney*

Nonparty appellants also contend that the district court's orders on suppression are appealable under application of the *Cohen* "collateral order" doctrine. With respect to the nonparties' motions to suppress, the trial court concluded that the nonparties lacked standing to file suppression motions. Because the nonparties' appeals raise unsettled questions of law regarding the standing of third parties to file suppression motions under Title III, because of the breadth of the surveillance at issue and because the nonparty appellants may not be

able to obtain appellate review of their privacy claims at any point in the future, we conclude that the three-pronged test of *Cohen* has been satisfied and we accept jurisdiction over their appeals. "Our consideration of the issues raised will neither halt nor disturb the orderly progress of the criminal proceeding." *United States v. Hubbard*, 650 F.2d 293, 314 (D.C.Cir.1980) (footnote omitted). We noted in the preceding discussion that the Second Circuit Court of Appeals declined to extend *Cohen* to apply to a defendant's interlocutory appeal of suppression orders involving electronic surveillance evidence. *Bova v. United States, supra*, 460 F.2d 404 (2d Cir. 1972). But *Bova* is distinguishable from our case, for we acknowledge jurisdiction only with respect to the district court's resolution of the unsettled question of the standing of these nonparties to file motions to suppress and do not reach, as the *Bova* court did, the merits of the district court's orders denying suppression.[10]

### C. Nonparty Standing to File Motions to Suppress

In concluding that the nonparties do not have standing to move for suppression of their intercepted communications in this case, the district court reasoned, first, that the Fourth Amendment exclusionary rule cannot be invoked by a person against whom no evidence is offered, and second, that the statutory suppression remedy created in Title III is no broader than the Fourth Amendment rule. The court then appeared to qualify the statutory horn of its analysis by acknowledging that a "nonparty may be able to prevent disclosure of intercepted conversations," citing *Anthony*

v. *United States*, 667 F.2d 870 (10th Cir. 1981); however, it failed to account for that possibility in stating its ultimate conclusion: that "[a nonparty] cannot prevent the admission of intercepted conversations against defendants in a criminal trial."[11] Although we agree that on the facts of this case the nonparties do not have standing to move for suppression under either the Fourth Amendment or Title III, we find it unnecessary to endorse the broad rule relied on by the district court that a nonparty (at least in a criminal trial) can *never* have standing under Title III to object to the use of his intercepted conversations. Thus we affirm the district court's denial of the nonparties' motions, but narrow the bases of those dispositions.[12]

### 1. Standing Under The Fourth Amendment

▪ The Fourth Amendment "affords protection against the uninvited ear[;] oral statements, if illegally overheard, . . . are . . . subject to suppression." *Alderman v. United States*, 394 U.S. 165, 171, 89 S.Ct. 961, 965, 22 L.Ed.2d 176 (1969). See *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). This suppression remedy, however, can only be invoked in a criminal trial, by the victim of the illegality, to prevent the use of the tainted evidence against him. *United States v. Calandra*, 414 U.S. 338, 347, 354, 94 S.Ct. 613, 619, 622, 38 L.Ed.2d 561 (1974); *Alderman v. United States*, 394 U.S. at 171–72, 174, 89 S.Ct. at 965, 967. The reason for these limitations is that the purpose of the Fourth Amendment suppression remedy "is not to redress the injury to the privacy of the search victim[,] . . . [but] to deter future unlawful police conduct. . . ." *United States v. Calandra*,

---

**10.** Like the defendants-appellants, nonparty appellants also argue that they are entitled to appeal the denial of their motions to suppress under Section 1292(a)(1). For the reasons stated with respect to the defendants' appeal, we reject the argument that the suppression orders are appealable as of right as injunctions.

**11.** The court expressly stated this conclusion in its order of June 23, 1982, see pages 1220–1221,

*supra*, and incorporated it by reference in its order of July 1, 1982, see p. 1221, *supra*.

**12.** Because our review is limited to the question of the nonparties' standing, we express no view regarding the district court's alternative bases for denying Webbe's motion to suppress. See pages 1221–1222, *supra*.

414 U.S. at 347, 94 S.Ct. at 619. The rule "is premised on a recognition that the need for deterrence and hence the rationale for excluding the evidence are strongest where the Government's unlawful conduct would result in imposition of a criminal sanction on the victim of the search." *Id.* at 348, 94 S.Ct. at 620. See *United States v. Kember,* 648 F.2d 1354, 1366–67 (D.C.Cir.1980).

■ In the present case the challenged evidence is not to be used against the non-party movants. Thus, as noted by the district court, even though the nonparties are allegedly the victims of illegality, they cannot move to suppress the evidence in the defendants' trial on the basis of the Fourth Amendment. *United States v. Kember,* 648 F.2d at 1367.

### 2. Standing Under Title III

Apart from their Fourth Amendment argument, the nonparties also contend that they have a separate right under Title III to contest the legality of the interceptions of their conversations and to suppress illegally seized communications. This argument presents a complex statutory question, one apparently of first impression. Thus we analyze it at some length.

Title III provides "a comprehensive scheme for the regulation of wiretapping and electronic surveillance." *Gelbard v. United States,* 408 U.S. 41, 46, 92 S.Ct. 2357, 2360, 33 L.Ed.2d 179 (1972). The statute: (1) authorizes the interception of wire communications in limited circumstances with prior judicial approval, 18 U.S.C. §§ 2516, 2518; (2) limits the circumstances in which intercepted communications may be used or disclosed, 18 U.S.C. § 2517; (3) imposes a criminal penalty for unauthorized interceptions and for disclosure or use of information obtained through such interceptions, 18 U.S.C. § 2511(1); and (4) creates a damage remedy for a person whose wire or oral communication is unlawfully intercepted, disclosed, or used, 18 U.S.C. § 2520. The statute also creates a suppression sanction. 18 U.S.C. § 2515 provides:

> Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision thereof if the disclosure of that information would be in violation of this chapter.

18 U.S.C. § 2518(10)(a), in turn, provides the means for invoking that sanction:

> Any aggrieved person in any trial, hearing, or proceeding in or before any court, department, officer, agency, regulatory body, or other authority of the United States, a State, or a political subdivision thereof, may move to suppress the contents of any intercepted wire or oral communication, or evidence derived therefrom, on the grounds that—
>
> (i) the communication was unlawfully intercepted;
>
> (ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or
>
> (iii) the interception was not made in conformity with the order of authorization or approval. . . .

Finally, 18 U.S.C. § 2510(11) defines the class of persons entitled to invoke the sanction through the motion to suppress:

> "[A]ggrieved person" means a person who was a party to any intercepted wire or oral communication or a person against whom the interception was directed.

The nonparties in this case were all participants in conversations intercepted under the court authorizations in question. Further, their conversations are to be used in a "trial . . . before . . . [a] court . . . of the

United States." [13] Thus under a literal reading of the statute they are "aggrieved persons" in a position to move for suppression pursuant to Section 2518(10)(a). The district court refused to accord them that status, however, on the ground that they fail to meet the standing requirement—adopted from Fourth Amendment law—that a movant must be a person against whom the challenged evidence is to be used. We must determine whether such a requirement is in fact implied in the statute.

The district court's no-standing decision was based on the premise that "Title III does not grant a suppression remedy broader than that encompassed in general Fourth Amendment law." As a general characterization that maxim has some credence. The legislative history of Title III indicates that the statutory suppression sanction was meant "largely [to] reflect[] existing law." S.Rep.No.1097, 90th Cong., 2d Sess. 96, reprinted in 1968 U.S.Code Cong. & Ad.News 2112, 2185. It was not intended "generally to press the scope of the suppression role beyond present search and seizure law." *Id.* See *Scott v. United States*, 436 U.S. 128, 139, 98 S.Ct. 1717, 1724, 56 L.Ed.2d 168 (1978). Further, consistent with general Fourth Amendment law, the definition of "aggrieved person" was limited so that only one whose conversation was intercepted or against whom the interception was directed would have standing to move for suppression. S.Rep.No.1097, *supra*, at 106, reprinted in 1968 U.S.Code Cong. & Ad.News at 2180. See *Alderman v. United States*, 394 U.S. at 175 & n.9, 89 S.Ct. at 967–68 & n.9. A practical reluctance unduly to disrupt ongoing proceedings also militates in favor of treating Section 2515 as embodying the limitations of the traditional exclusionary rule. Cf. *In re Vigorito*, 499 F.2d 1351, 1354 (2d Cir.), certiorari denied, 419 U.S. 1056, 95 S.Ct. 640, 42 L.Ed.2d 654 (1974) (grand jury proceeding). Finally, consistent with general Fourth Amendment law, a person who

alleges that his rights have been violated has additional criminal and civil remedies beyond the suppression sanction. See 18 U.S.C. §§ 2511(1), 2520; cf. *United States v. Kember, supra*, 648 F.2d at 1366 (alternative remedies under the Fourth Amendment). Focusing on the specific issue raised in this case, however, we are reluctant to hold that this parallel between Title III and the Fourth Amendment is sufficient ground on which to base a broad rule that a nonparty (even if he is "aggrieved") can never invoke the Section 2515 suppression remedy in an ongoing proceeding, or at least in an ongoing criminal trial. Although Title III's suppression remedy has its roots in the Fourth Amendment exclusionary rule, it is not simply coextensive with that rule.

The Supreme Court has observed that Title III (and particularly Section 2515) is the result of a "congressional effort to afford *special safeguards* against the unique problems posed by misuse of wiretapping and electronic surveillance." *United States v. Calandra*, 414 U.S., *supra*, at 355 n.11, 89 S.Ct. at 623 n.11 (emphasis added). One marked difference between the statutory suppression sanction and the Fourth Amendment exclusionary rule is that the former bars the use of illegally seized evidence not just in a criminal trial but rather "in any trial, hearing or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision thereof. . . ." 18 U.S.C. § 2515. A second difference, of particular importance in this case, relates to the scope of the respective purposes of the safeguards. This difference was explained in the Supreme Court's decision in *Gelbard v. United States, supra*.

█ In *Gelbard* the Court held that "grand jury witnesses . . . are entitled to invoke the prohibition of § 2515 as a de-

---

**13.** There is one exception to this point. The government does not intend to offer any of the conversations involving Morris Weiser in the case in chief. See note 5, *supra*. Thus he is not an "aggrieved person" within the meaning of the statute.

fense to contempt charges brought against them for refusing to testify." 408 U.S. at 43, 92 S.Ct. at 2359. In reaching that conclusion the Court, after surveying the legislative history of Title III, emphasized that "§ 2515 serves not only to protect the privacy of communications, but also to ensure that the courts do not become parties in illegal conduct. . . ." *Id.* at 51, 92 S.Ct. at 2362 (footnote omitted). This point is critical because under Title III, unlike the Fourth Amendment, the invasion of privacy is not simply "over and done with" when an unlawful intrusion has been effected. Rather, the disclosure or use of information obtained through such an intrusion amounts to a separate injury to the victim's privacy interest. *Id.* at 51–52, 92 S.Ct. at 2362–63. See 18 U.S.C. §§ 2511(1), 2517; cf. *United States v. Calandra, supra,* 414 U.S. at 354, 89 S.Ct. at 623 (A subsequent use of illegally seized evidence works no new wrong under the Fourth Amendment.). Thus the Court recognized that Section 2515—beyond serving the traditional exclusionary rule function of deterring future unlawful interceptions—also plays a role in protecting against the use or disclosure of communications that have been illegally seized. The significance of this additional purpose of Section 2515 in terms of nonparty standing is demonstrated in the Tenth Circuit's decision in *Anthony v. United States,* 667 F.2d 870 (10th Cir. 1981), certiorari denied, —— U.S. ——, 102 S.Ct. 2959, 73 L.Ed.2d 1350 (1982).

In *Anthony* the defendant was convicted of unlawful interception of the wire communications of several individuals, among them, Dr. Vernon S. Sisney. After entry of the verdict the defendant moved (1) for a new trial on the basis of newly discovered evidence, and (2) for discovery of the contents of tapes of intercepted communications (including some of Dr. Sisney's) that the defendant had made and that the government had subsequently seized. In response, Dr. Sisney filed a motion to intervene for purposes of opposing the discovery and to suppress the contents of the tapes under Section 2515. The district court denied Dr. Sisney's motion, reasoning that he did not have standing to suppress the information. The court of appeals reversed, holding that Dr. Sisney was in fact an "aggrieved person" entitled to invoke the sanction of Section 2515 through the motion prescribed in Section 2518(10)(a). *Id.* at 878.

Although the Tenth Circuit did not explicitly discuss the significance of Dr. Sisney's status as a nonparty in terms of his standing to suppress,[14] it is clear from the Court's overall discussion that its decision was motivated by a concern to protect Dr. Sisney's privacy interest in nondisclosure of the admittedly illegally intercepted communications.[15]

■ In the present case the district court acknowledged this privacy interest in nondisclosure, yet failed to account for the risk to that interest in denying the nonparties' motions. Instead the court imposed an absolute bar (at least in criminal trials) to nonparty standing under the statute.[16] We do not think that such a broad prohibition is necessarily dictated by the language or pur-

---

**14.** The controversy in *Anthony* focused on whether § 2518(10)(a) applies to interceptions by private individuals. The Court concluded that it does. *Id.*

**15.** A similar concern was recognized in an analogous situation in *In re Applications of Kansas City Star,* 666 F.2d 1168 (8th Cir. 1981). In that case the Court permitted persons who were not parties in a bond revocation proceeding to object that "public" disclosure of intercepted conversations to which they were party incident to the proceeding would violate the

sealing requirements of 18 U.S.C. § 2518(8)(a) and (b). The Court observed that because of the overriding congressional concern for the protection of privacy in the enactment of Title III, the "good cause requirement [for disclosure under § 2518] calls for at least some consideration by courts of the privacy of other people which might be affected by disclosure." *Id.* at 1176.

**16.** See pages 1220–1221, *supra.*

pose of Title III. Rather, a no-standing decision based on a movant's nonparty status must be responsive in some way to the risk of disclosure of unlawfully seized communications.[17] A comparison of the relative risks in *Anthony* and this case, however, convinces us that despite the gap in the district court's analysis, its no-standing decision was in fact correct.

In *Anthony*, absent Dr. Sisney's involvement, there would have been no one in a position to contest the use or disclosure of the intercepted communications. The only other party to the proceeding, the government, clearly was not an "aggrieved person" as to the challenged conversations. Thus, had the court denied Dr. Sisney standing, his privacy interest in nondisclosure would have been left totally unprotected.[18] In contrast, in the present case, even without the involvement of the nonparties, the defendants were able to test the legality of the interceptions of all the communications that the government intends to use

at trial. *United States v. Dorfman, supra,* at 393 n.56.[19] Denying the nonparties standing in this context did not deny the court an opportunity to evaluate the legality of the underlying interceptions.[20] Rather, it simply foreclosed the nonparties from separately retesting the legality of the interceptions of their conversations. See *Scott v. United States,* 436 U.S. at 135 n.10, 98 S.Ct. at 1722 n.10.[21] Thus on the facts presented in this case, the nonparties' interests in nondisclosure have been adequately safeguarded. A no-standing decision is not inconsistent with the legislative purpose of Title III.

Accordingly, the orders of the district court are affirmed.

---

17. This conclusion is not inconsistent with the Second Circuit's decision in *In re Vigorito, supra,* finding that one whose conversations are overheard pursuant to court-ordered electronic surveillance and who is not a criminal defendant or grand jury witness may not move to suppress the use of recordings of his conversation before a grand jury. Because of the "secret" nature of such proceedings, the risk of disclosure was not at issue in that case.

18. Dr. Sisney presumably could have used the statute's civil remedy (§ 2520) to gain compensation after the disclosure was complete. He could not have used the civil remedy to prevent the impending harm. See S.Rep.No. 1097, *supra,* reprinted in 1968 U.S.Code Cong. & Ad. News at 2196 ("Injunctive relief ... is not intended to be available [under § 2520].").

19. The position of Allen Dorfman is of particular significance. Because he has a proprietary interest in Amalgamated, the site of the wiretap, he had "standing to object to the conduct of the surveillance as a whole...." *Id.* Cf. *Alderman v. United States,* 394 U.S. at 176, 89 S.Ct. at 968.

20. Thus the present case is different from *Anthony.* In that case, had the Court denied the nonparty standing to move for suppression, the Court would have been placed in the anomalous position of overseeing the disclosure of

admittedly unlawfully intercepted conversations. See *Anthony v. United States,* 667 F.2d at 882 ("[I]f we were to require the prosecution to disclose the contents of the tapes ..., we would cast the prosecution in the role of a party to a crime.").

21. In *Scott* the Supreme Court found it unnecessary to address the question of whether the defendant, Scott, could raise a Title III interception minimization requirement challenge (see 18 U.S.C. § 2518(5)) based upon the interception of conversations to which he was not a party, reasoning that a second defendant, Thurmon, was a party to some of the conversations and thus had standing. The Court explained:

> [E]ven if we were to decide that Scott has no standing we would be compelled to undertake the decision of these issues. If, on the other hand, we were to decide that Scott does have standing, we would simply repeat exactly the same analysis made with respect to Thurmon's claim and find against Scott as well.

*Id.*

An examination of the district court's evaluation of the merits of Webbe's claim, see pages 1221-1222, *supra,* demonstrates that a similar redundancy would arise in granting the nonparties standing in this case.