In re HIGH FRUCTOSE CORN
SYRUP ANTITRUST
LITIGATION.

**This Document Relates To All Actions.**

No. MDL 1087.

United States District Court,
C.D. Illinois.

April 27, 1999.

H. Laddie Montague, Jr., Charles P. Goodwin, Berger & Montague, P.C., Philadelphia, PA, Robert N. Kaplan, Gregory K. Arenson, Kaplan, Kilsheimer & Fox LLP, New York City, Michael J. Freed, Edit F. Canter, Barat S. McClain, Much Shelist Freed Denenberg Ament & Rubenstein, P.C., Chicago, Illinois, for the plaintiff Class.

William F. Martson, Jr., Brian J. Posewitz, David S. Aman, Tonkon Torp LLP, Portland, Oregon, for plaintiff Gray & Company.

Aubrey M. Daniel, III, Steven R. Kuney, Paul Mogin, Williams & Connolly, Washington, D.C., for defendant Archer Daniels Midland Company.

Mark W. Ryan, Robert E. Bloch, Mayer Brown & Platt, Washington, D.C., for defendant Cargill, Incorporated.

Terrence M. Grimm, Joseph Spiegler, Winston & Strawn, Chicago, Illinois, for defendant A.E. Stanley Manufacturing Company.

Donald R. Harris, Edward F. Malone, Jenner & Block, Chicago, Illinois, for defendant American Maize Products Company.

John R. Horan, Oleg Rivkin, Fox, Horan & Camerini, LLP, New York City, for defendants Hubinger Company and Roquette America, Inc.

Terry M. Henry, United States Department of Justice, Civil Division, Washington, D.C., for United States Department of Justice.

Jeffrey Cole, Andrew Staes, Cole & Staes, Ltd., Chicago, Illinois, for James R. Randall.

## AMENDED ORDER

MIHM, District Judge.

This matter is before the Court on Defendant Archer Daniels Midland Company's ("ADM") Motion to Quash or, in the Alternative, to Modify Plaintiffs' Subpoena and James R. Randall's ("Randall") Motion to Intervene and to Quash Class Plaintiffs' Subpoena Duces Tecum. For the reasons stated herein, ADM's Motion to Quash is GRANTED IN PART and DENIED IN PART, and Randall's Motion to Intervene and to Quash is GRANTED IN PART and DENIED IN PART.

## Factual Background

For a period of approximately two and one half years, Mark Whitacre ("Whitacre"), former corporate vice president and president of ADM's BioProducts division, recorded or consented to the recording of hundreds of hours of his conversations with other ADM personnel and third parties. On October 28, 1996, Plaintiffs served a subpoena *duces tecum* on the custodian of records for the United States Department of Justice ("the DOJ") seeking production of the tapes made by or with the consent of Whitacre. After unsuccessful negotiations with the DOJ, Plaintiffs moved to compel compliance with the subpoena. On February 26, 1997, this Court held a hearing on the Motion to Compel and ruled that those tapes pertaining to lysine only and those tapes which had been disclosed to the law firm of Simpson Thatcher & Bartlett, counsel to a committee of ADM's board should be disclosed to Plaintiffs.

On April 10, 1997, the Court granted the DOJ's request for certification of interlocutory appeal under 28 U.S.C. § 1292(b). On October 30, 1997, the Seventh Circuit reversed this Court's ruling with instructions to quash Plaintiffs subpoena for invading the law enforcement investigatory privilege. *See Dellwood Farms, Inc. v. Cargill, Inc.,* 128 F.3d 1122, 1126, 1128 (7th Cir.1997).

On November 24, 1998, Plaintiffs served a subpoena *duces tecum* on the Department of Justice seeking, *inter alia,* all recordings made by or with the consent of Whitacre during the FBI's investigation. On January 22, 1999, the DOJ agreed to produce the approximately 200 tapes that remain from the DOJ's criminal antitrust investigation. Those tapes introduced in the criminal trial of *United States v. Andreas,* 96 CR 762 (N.D.Ill), which are not included in the 200 figure, are already part of the public record and have been delivered to Plaintiffs and Defendants. On February 12, 1999, ADM moved to quash, or in the alternative, to modify Plaintiffs'

subpoena seeking the disclosure of the remaining tapes. In its Motion to Quash, ADM argues that the subpoena must be quashed because Whitacre's taping violated Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510 *et seq.,* in that the tapes were not made under color of law pursuant and/or were made with a criminal or tortious purpose. *See* 18 U.S.C. §§ 2511(2)(c) and (2)(d). ADM further argues that even if the tapes were lawfully made either pursuant to § 2511(2)(c) or (2)(d), Title III does not permit the disclosure of the tapes in an action in which the Government is not a party. *See* 18 U.S.C. § 2517(3). In the alternative, ADM argues that if this Court holds that the tapes may be discovered by Plaintiffs that it appoint a special master to recommend to the Court which portions, if any, of the tapes should be redacted due to a lack of relevancy.

On March 2, 1999, Randall, who served as president of ADM until 1997, moved to intervene and to quash Plaintiffs' subpoena. In his Motion to Intervene and to Quash and accompanying Memorandum in Support, Randall asserts that he is an "aggrieved person" under 18 U.S.C. § 2510(11) because he believes that approximately 20 of his conversations were unlawfully intercepted by Whitacre. Therefore, according to Randall, he should be allowed to intervene pursuant to 18 U.S.C. § 2518(10)(a). In support of his Motion to Quash, Randall asserts the same or similar arguments that are asserted by ADM: the tapes were unlawfully made and Title III does not authorize disclosure to private civil litigants in a case in which the Government is not a party.

The Court held oral arguments on March 22, 1999. This Order follows.

### Discussion

#### I. Standing

Section 2518(10) of Title III provides:

Any aggrieved person in any trial, hearing, or proceeding in or before any

court, department, officer, agency, regulatory body, or other authority of the United States, a State, or a political subdivision thereof, may move to suppress the contents of any wire or oral communication intercepted pursuant to this chapter, or evidence derived therefrom, on the grounds that—

(i) the communication was unlawfully intercepted;

(ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or

(iii) the interception was not made in conformity with the order of authorization or approval.

Such motion shall be made before the trial, hearing, or proceeding unless there was no opportunity to make such motion or the person was not aware of the grounds of the motion. If the motion is granted, the contents of the intercepted wire or oral communication, or evidence derived therefrom, shall be treated as having been obtained in violation of this chapter. The judge, upon the filing of such motion by the aggrieved person, may in his discretion make available to the aggrieved person or his counsel for inspection such portions of the intercepted communication or evidence derived therefrom as the judge determines to be in the interest of justice.

18 U.S.C. § 2518(10)(a). Section 2510(11) of Title III defines "aggrieved person" as "a person who was party to any intercepted wire, oral, or electronic communication or a person against whom the interception was directed." 18 U.S.C. § 2510(11). This provision has been interpreted as conferring standing upon those persons who are (1) "person[s]" under 18 U.S.C. § 2510(6) and (2) either were parties to the intercepted communication or parties on whose premises the intercepted communication took place. *See Alderman v. United States,* 394 U.S. 165, 176 & n. 9, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969); *United States v. Civella,* 648 F.2d 1167, 1171 & n. 11 (8th Cir.), *cert. denied,* 454 U.S. 867, 102 S.Ct. 330, 70 L.Ed.2d 168 (1981).

Plaintiffs do not argue that ADM does not have standing to challenge the disclosure of the tapes. They do, however, argue that Randall does not have standing to intervene. In support of this argument, Plaintiffs cite the case of *United States v. Dorfman,* 690 F.2d 1217 (7th Cir.1982) ("*Dorfman I* "). In *Dorfman I,* five defendants in the underlying criminal case filed a motion to suppress material obtained by a court-authorized electronic surveillance. The district court denied the motion to suppress. In addition to the defendants' challenge to the wiretap, there were two other related challenges. The first related challenge was brought by five persons whose conversations were intercepted but who were not charged in the indictment. Following the entry of the order denying the defendants' motion to suppress, these five persons filed a motion to suppress the intercepted conversations in which they participated and to obtain access to the transcripts of those intercepted conversations. The district court held that Title III does not grant a suppression remedy broader than that provided by the Fourth Amendment and, therefore, as non-parties, the five people did not have standing under Title III to challenge the wiretap conversations in which they unknowingly participated. These five people appealed the district court's order. *See id.* at 1219–21.

The second related challenge was filed by a gentleman by the name of William Webbe ("Webbe"). Webbe was named in the indictment as an unindicted co-conspirator. Six days after the district court entered its order denying the nonparties' motion to suppress, Webbe filed his own motion to suppress the conversations in which he was a party. After allowing Webbe access to the recordings at issue, the district court denied Webbe's motion to suppress because: (1) Webbe was fully aware of the earlier hearings involving the defendants' motion to suppress but chose not to participate, thereby raising a "clas-

sic case for the application of the common law doctrine of laches"; (2) Webbe had already challenged the lawfulness of the surveillance when he was called to testify before the grand jury; (3) Webbe was not a named interceptee on the authorization order and, therefore, lacked standing to challenge the facial validity of the order; and (4) his motion was denied on the merits for the same reason that the defendants' motion was denied on the merits. *Dorfman I,* 690 F.2d at 1221. Webbe also appealed the district court's ruling.

On appeal, the Seventh Circuit addressed the non-parties' (the five non-party people and Webbe) arguments together. The court of appeals noted that the nonparties were all participants in conversations intercepted under the court authorization in question. Further, their conversations were to be used in a " 'trial ... before ... (a) court ... of the United States.' " *Id.* at 1226 (quoting § 2518(10)(a)). Therefore, according to the *Dorfman I* court, "under a literal reading of the statute they are 'aggrieved persons' in a position to move for suppression pursuant to Section 2518(10)(a)." However, the court of appeals still held that the nonparties lacked standing to challenge the recordings. The court stated that because the "defendants were able to test the legality of the interceptions of all the communications that the government intend[ed] to use at trial," the involvement of the nonparties was unnecessary. *Id.* at 1229. The court of appeals further stated:

> Denying the nonparties standing in this context did not deny the court an opportunity to evaluate the legality of the underlying interceptions.... Rather, it simply foreclosed the nonparties from separately retesting the legality of the interceptions of their conversations.

*Id.*

In the course of its opinion, the *Dorfman I* court distinguished its decision from one reached by the Tenth Circuit in *Anthony v. United States,* 667 F.2d 870

(10th Cir.1981), *cert. denied,* 457 U.S. 1133, 102 S.Ct. 2959, 73 L.Ed.2d 1350 (1982), a case relied upon by Randall in his Memorandum in Support of his Motion to Intervene and Quash. In *Anthony,* the defendant was convicted of unlawful interception of the wire communications of several individuals, among them, Dr. Vernon Sisney. After entry of the verdict, the defendant moved for discovery of the contents of the tapes of intercepted communications that the defendant had made and that the government had subsequently seized. In response, Dr. Sisney moved to intervene for purposes of opposing the discovery and to suppress the tapes in accordance with 18 U.S.C. § 2515. The district court denied the motion, reasoning that Dr. Sisney did not have standing to suppress the information. The Tenth Circuit reversed and held that Dr. Sisney was, in fact, an "aggrieved person" entitled to invoke the sanction of suppression set forth in § 2515 of Title III. *Id.* at 878.

Distinguishing its case from the *Anthony* case, the *Dorfman I* court stated:

> In *Anthony,* absent Dr. Sisney's involvement, there would have been no one in a position to contest the use or disclosure of the intercepted communications. The only other party to the proceeding, the government, clearly was not an "aggrieved person" as to the challenged conversations. Thus, had the court denied Dr. Sisney standing, his privacy interest in nondisclosure would have been left totally unprotected.

*Dorfman I,* 690 F.2d at 1229. The *Dorfman I* court further pointed out that had the *Anthony* court denied the nonparty standing to move for suppression, the court "would have been placed in the anomalous position of overseeing the disclosure of admittedly unlawfully intercepted conversations." *Id.* at 1229 n. 20.

Randall attempts to distinguish *Dorfman I* from this case. He correctly argues that on more than one occasion the court stated that its decision was based on

the facts of the case before it. According to Randall, the "critical facts" in *Dorfman I* were the criminal context of the case and the belated nature of the nonparties' motions to suppress. Randall further asserts that unlike Webbe in *Dorfman I*, he "was not indicted in the criminal case, was not a witness at a grand jury, was not a witness at trial for either side, and had absolutely no role in the defense or prosecution of the criminal case." (Randall Reply at 9).

One interpretation of *Dorfman I* is that the distinctions pointed out by Randall are not critical distinctions. Arguably, the *Dorfman I* relied only upon the fact that the defendants were able to test the legality of the interceptions, thereby foreclosing the need of the nonparties to retest the legality of the interceptions. *See Dorfman I* at 1229. A reading of Randall's Memorandum in Support of his Motion and Intervene and to Quash indicates that he is either making or reformulating the arguments made by ADM in its Motion to Quash. Therefore, even though the language of § 2518(10)(a) supports Randall's right to intervene in this case, one reading of *Dorfman I* seems to imply that if a party to the litigation is testing the legality of alleged unlawful interceptions, there is no need, and hence no standing, for a nonparty to test the legality on the same grounds.

■ However, upon reconsideration of its oral finding made during the March 22, 1999, oral arguments on this matter hearing that Randall did not have standing to intervene, the Court now finds that it cannot overlook the language in *Dorfman I* that the district court's denial of the nonparties standing "in [that] context" did not deny the district court the opportunity to test the legality of the tapes at issue. *See id.* at 1229. Instead, "it simply foreclosed the nonparties from separately retesting the legality of the interceptions of their conversations." *Id.* (emphasis added). While Randall's arguments are virtually the same as ADM's, he is not "retesting" the legality of the tapes at issue. He

appears before this Court at the same time as ADM to test the legality of the tapes. Therefore, since the Court is not dealing with a *separate retesting* of the legality of the tapes, but instead a contemporaneous challenge, the Court does not believe that the *Dorfman I* court would hold that Randall does not have standing to intervene. Accordingly, this Court holds that Randall does have standing to intervene pursuant to § 2510(10)(a).

## II. "Oral Communication"

The tapes made by Whitacre include both tape recordings of telephone conversations and tape recordings of conversations in which Whitacre and the other person or persons being recorded were physically present in the same room at the same time ("face to face recordings"). Plaintiffs initially argue that Title III does not apply to the recordings of the face to face conversations. For this proposition, Plaintiffs point to the definition of "oral communications" in 18 U.S.C. § 2510(2):

> "[O]ral communication" means any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception *under circumstances justifying such expectation....*

(emphasis added).

In *In the Matter of John Doe Trader Number One*, 894 F.2d 240, 242 (7th Cir. 1990), the Seventh Circuit stated:

> According to the legislative history of Title III, [the definition of "oral communication"] was intended to parallel the "reasonable expectation of privacy" test created by the Supreme Court in *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). *See* S.Rep. No. 1097, 90th Cong.2d Sess., *reprinted in* 1968 U.S.Code Cong. & Admin.News 2112–2274. *See also United States v. Harrelson*, 754 F.2d 1153 (5th Cir.1985). Thus, Congress limited its protection of "oral communications" under Title III to those statements made where "first, a

person [has] exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as 'reasonable.' "

(Alterations in original); *see also Angel v. Williams,* 12 F.3d 786, 790 (8th Cir.1993) ("We know from the legislative history of the federal wiretap law that the definition of oral communication is intended to reflect existing [Fourth Amendment] law"). Therefore, in order to determine whether the face to face recordings were "oral communications" for purposes of 18 U.S.C. § 2510(2), the Court must ascertain whether those persons recorded by Whitacre during face to face recordings had a reasonable expectation of privacy. *See id.* at 242–43.

In *John Doe Trader,* Doe's conversations were recorded while the defendant was on the floor of the Chicago Mercantile Exchange ("CME"). As stated by the court of appeals:

Doe's conversations were overheard on the trading floor of the CME. Appellant himself describes this environment as "typically noisy and frantic." The FBI agent conducting the investigation was clearly present only a few feet from Doe and he was able to overhear and record each of Doe's statements. In fact, the agent was a participant in many of these conversations. The tape recorder concealed on the agent was unable to hear more than the agent himself could. Thus, by exposing these statements to the public in this manner, Doe cannot now contend that he reasonably believed his conversations were private and therefore subject to constitutional protection.

*Id.* The *John Doe Trader* court held that Doe did not have an objectively reasonable expectation of privacy in the recorded statements and, therefore, the recorded

statements were not "oral communications" under § 2510(2). *Id.* at 245.

ADM [1] contends that *John Doe Trader* is readily distinguishable from this case, as the recordings in *John Doe Trader* were made on the busy and frantic floor of the CME, whereas the face to face recordings made by or with the consent of Whitacre were made on ADM's premises. The Court agrees that the floor of the CME may be more frantic than an office or conference room at ADM, and a more public setting. However, this distinction is not dispositive on the issue of whether those people who were recorded by Whitacre during face to face recordings possessed a reasonable expectation of privacy. In *United States v. White,* 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971), the Supreme Court stated:

*Hoffa v. United States,* 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966), which was left undisturbed by *Katz,* held that however strongly a defendant may trust an apparent colleague, his expectations [that a person with whom he is conversing will then or later reveal the conversation to police] are not protected by the Fourth Amendment when it turns out that the colleague is a government agent regularly communicating with the authorities. In these circumstances, "no interest legitimately protected by the Fourth Amendment is involved," for that amendment affords no protection to "a wrongdoer's misplaced belief that a person to whom he voluntarily confides his wrongdoing will not reveal it." *Hoffa v. United States,* at 302, 87 S.Ct., at 413. No warrant to "search and seize" is required in such circumstances, nor is it when the Government sends to defendant's home a secret agent who conceals his identity and makes a purchase of narcotics from the accused, . . ., or when the same agent, unbeknownst to the de-

---

1. Because Randall's arguments are the same as ADM's, the Court's reference to ADM in the Discussion portion of the Order refers to both ADM and Randall with the exception of

Part IV of the Discussion portion, which addresses an argument not made by Randall— whether the Court should appoint a special master.

fendant, carries electronic equipment to record the defendant's words and the evidence so gathered is later offered in evidence. . . .

*White,* 401 U.S. at 749, 91 S.Ct. 1122.

In *Hoffa,* Edward Partin ("Partin"), a Teamsters Union official, made repeated visits to James Hoffa's ("Hoffa") hotel suite during the pendency of the Test Fleet trial in 1962 in Nashville, Tennessee. Unbeknownst to Hoffa, Partin was acting as a government informant and made various reports to federal agents concerning conversations held with Hoffa and his associates, disclosing, among other things, endeavors to bribe the Test Fleet jury. One of the petitioners argued that Partin failed to disclose his role as a government informer and, therefore, this vitiated the consent given to Partin to enter the hotel suite and listen in on or participate in the various discussions. The Supreme Court rejected this argument. Although recognizing that a hotel room "can clearly be the object of Fourth Amendment protection," the Court stated:

> In the present case, however, it is evident that no interest legitimately protected by the Fourth Amendment is involved. It is obvious that the petitioner was not relying on the security of his hotel suite when he made the incriminating statements to Partin or in Partin's presence. Partin did not enter the suite by force or by stealth. He was not a surreptitious eavesdropper. Partin was in the suite by invitation, and every conversation which he heard was either directed to him or knowingly carried on in his presence. The petitioner, in a word, was not relying on the security of his hotel room; he was relying upon his misplaced confidence that Partin would not reveal his wrongdoing.

*Hoffa,* 385 U.S. at 302, 87 S.Ct. 408.

Similarly, those people who were recorded by Whitacre in his presence were relying on their misplaced confidence that Whitacre would not reveal the contents of the conversations. ADM has not argued that Whitacre's presence during these conversations was without consent or that he was a surreptitious eavesdropper. In short, while those people recorded by Whitacre on ADM's premises may have had a subjective expectation that their conversations would be kept private (based on location and also the fact that ADM officials, to include Whitacre, had signed nondisclosure agreements), it was not a reasonable expectation in light of *Hoffa* and *White.* As succinctly stated by the *White* Court:

> Our problem, in terms of the principle announced in *Katz,* is what expectations of privacy are constitutionally "justifiable"—what expectations the Fourth Amendment will protect in the absence of a warrant. So far, the law permits the frustration of actual expectations of privacy by permitting authorities to use testimony of those associates who for one reason or another have determined to turn to the police, as well as by authorizing the use of informants exemplified by *Hoffa* . . . . If the law gives no protection to the wrongdoer whose trusted accomplice is or becomes a police agent, neither should it protect him when that same agent has recorded or transmitted the conversations which are later offered in evidence to prove the State's case.

*White,* 401 U.S. at 751–52, 91 S.Ct. 1122 (citation omitted).

ADM, however, argues that the Court's conclusion that the face to face recordings are not recordings of "oral communications" under Title III renders 18 U.S.C. §§ 2511(2)(c) and (2)(d) meaningless. Section 2511(2)(c) provides:

> It shall not be unlawful under this chapter for a person acting under color of law to intercept a wire, oral, or electronic communication, where such person is a party to the communication or one of the parties to the communication

has given prior consent to such interception.

Section 2511(2)(d) provides:

It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.

ADM argues that if the face to face recordings are not "oral communications" and, therefore, not subject to the restrictions of Title III, then why did Congress provide that it shall not be unlawful to intercept an oral communication when a person does so acting under color of law or without a tortious or criminal purpose and is a party to the conversation or gives prior consent? *See* §§ 2511(2)(c) and (2)(d).

■ The Court is not unsympathetic to ADM's argument. On the one hand, the case law in this and other circuits is clear that the definition of "oral communication" in § 2510(2) is intended to parallel the reasonable expectation of privacy test set forth in *Katz. See John Doe Trader,* 894 F.2d at 242; *see also Angel,* 12 F.3d at 790. Precedent also clearly establishes that an alleged wrongdoer does not have a reasonable expectation that a trusted accomplice will not disclose the contents of conversations to the authorities or that the conversations will not be recorded by the accomplice. *See, e.g., White,* 401 U.S. at 751–52, 91 S.Ct. 1122. On the other hand, Congress uses the term "oral communication" in §§ 2511(2)(c) and (2)(d) in the same breath that it uses "where such person is party to the communication or one of the parties to the communication has given prior consent to such interception." Therefore, it appears that Congress contemplated that some face to face, consen-

sual recordings would involve a reasonable expectation of privacy on the part of the person or persons who were unaware that they were being recorded.

The Court is well aware of the statutory construction maxim that a statute should not be construed in such a manner as to render words or phrases meaningless, redundant, or superfluous. *See Welsh v. Boy Scouts of Am.,* 993 F.2d 1267, 1272 (7th Cir.) (citation omitted), *cert. denied,* 510 U.S. 1012, 114 S.Ct. 602, 126 L.Ed.2d 567 (1993). However, if the Court accepted ADM's argument that Whitacre's consensual, face to face recordings are "oral communications" under § 2510(2), then this Court would have to disregard the precedent that clearly establishes that the definition of "oral communication" parallels the Fourth Amendment reasonable expectation of privacy test established *Katz* and further disregard the case law precedent that holds the Fourth Amendment does not give an alleged wrongdoer protection against a trusted accomplice tape recording or divulging the contents of conversations. In addition, §§ 2511(2)(c) and (2)(d) also refer to wire and electronic types of communication, which, at least in the case of wire communications, are protected against interception regardless of the speaker's reasonable expectation of privacy. *See, e.g., Briggs v. American Air Filter Co., Inc.,* 630 F.2d 414, 417 n. 4 (5th Cir.1980). While this does not completely address the apparent conflict between § 2510(2) and §§ 2511(2)(c) and (2)(d), it is clear that §§ 2511(2)(c) and (2)(d) are broader in scope, as they pertain to all three types of communications defined in Title III and not just oral communications.

Accordingly, despite the apparent conflict between § 2510(2) and §§ 2511(2)(c) and (2)(d), the Court concludes that those tape recordings made by or with the consent of Whitacre of conversations at which he and the other person or persons being recorded were physically present are not recordings of "oral communications" and

shall be turned over to Plaintiffs and Defendants for purposes of this litigation.

## III. 18 U.S.C. § 2517(3)

 Although the Court has held that the face to face recordings are not recordings of "oral communications," the issue remains whether the interception of telephone calls by Whitacre may also be disclosed in this litigation. In *Briggs, supra,* the Fifth Circuit stated that a telephone conversation is a "wire communication" as that term is defined in 18 U.S.C. § 2510(1). *Briggs,* 630 F.2d at 417. Such communications are protected against interception by electronic, mechanical, or other devices regardless of the speaker's expectation of privacy. *See id.* at 417 n. 4; *see also United States v. Harpel,* 493 F.2d 346, 349 (10th Cir.1974) (recognizing lack of requirement to prove reasonable expectation of privacy with regard to intercepted wire communications). Accordingly, the Court's preceding expectation of privacy analysis has no bearing on whether the contents of the interceptions of wire communications may be disclosed in this case.

ADM argues that the interceptions of telephone calls may not be disclosed under § 2517, which sets forth under what circumstances lawful interceptions may be disclosed. Plaintiffs, on the other hand, argue that consensual recordings of telephone conversations that are made in accordance with § 2511(2)(c) or (2)(d) are exempt from the restrictions of § 2517. For purposes of this analysis, the Court assumes that the wire communications intercepted by Whitacre were lawful under either § 2511(2)(c) or (2)(d).

The specific provision at issue is § 2517(3), which provides:

Any person who has received *by any means authorized by this chapter,* any information concerning a wire, oral, or electronic communication, or evidence derived therefrom intercepted *in accordance with the provisions of this chapter* may disclose the contents of that communication or such derivative evidence while giving testimony under oath or affirmation in any proceeding held under the authority of the United States or of any State or political subdivision thereof.

According to Plaintiffs, interceptions that are made by "consent" or "under color of law" are not "by means authorized by this chapter." They argue that only 18 U.S.C. §§ 2516 and 2518 in Title III describe a procedure to obtain "authorization and approval" by a court for interceptions of wire or oral communications and by Congress using the term "authorized" in § 2517(3) it was referring only to interceptions authorized under §§ 2516 and 2518, not consensual interceptions.

Section 2516 is entitled "Authorization for interception of wire, oral, or electronic communications" and provides, in pertinent part:

The Attorney General ... may *authorize* an application to a Federal judge of competent jurisdiction for, and such judge may grant in conformity with section 2518 of this chapter an order *authorizing* or approving the interception of wire or oral communications by the Federal Bureau of Investigation, or a Federal agency having responsibility for the investigation of the offense as to which the application is made....

18 U.S.C. § 2516(1) (emphasis added). Subsections 2516(2) and (3) provide the same type of authorization to States' Attorneys General, States' Attorneys and United States Attorneys. Section 2518 then sets forth the procedure for filing an application with a judge of competent jurisdiction:

Each application for an order *authorizing* or approving the interception of a wire, oral, or electronic communication under this chapter shall be made in writing upon oath or affirmation to a judge of competent jurisdiction and shall state the applicant's authority to make such application. Each application shall in-

clude [the information listed in subsections (1)(a) through (1)(f) ].

18 U.S.C. § 2518(1) (emphasis added).

Plaintiffs, however, have failed to point out § 2511(1)(e)(i) uses the term "authorized" in the context of § 2511(2)(c). Section 2511(1)(e)(i) provides that any person who:

> intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, *intercepted by means authorized by* sections 2511(2)(a)(ii), *2511(2)(b) to (c)*, 2511(2)(e), 2516, and 2518 of this chapter .... shall be punished as provided in subsection (4) or shall be subject to suit as provided in subsection (5).

(Emphasis added). Therefore, it is clear that use of the term "authorized" is not limited to §§ 2516 and 2518.

ADM argues that in addition to § 2511(1)(e)(i) using the term "authorized" in the context of § 2511(2)(c), Plaintiffs have focused on the wrong phrase in § 2517(3). According to ADM, the relevant phrase in § 2517(3) is "in accordance with the provisions of this chapter." ADM contends that consensual recordings pursuant to § 2511(2)(c) or (2)(d) are interceptions made "in accordance with the provisions of this chapter" and, therefore, are subject to the restrictions of § 2517(3). ADM further cites case authority in support of its argument that § 2517(3) governs the admissibility of tape recordings when they are made in accordance with § 2511(2)(c). In *United States v. Armocida*, 515 F.2d 49 (3rd Cir.), *cert. denied*, 423 U.S. 858, 96 S.Ct. 111, 46 L.Ed.2d 84 (1975), the defendant challenged the admissibility of certain tape recordings. In upholding the district court's order allowing the tapes, the Third Circuit stated:

> We agree with the Government that the warrantless recordings of a telephone conversation with the consent of only one of the parties is perfectly proper under federal law and that the transcript of such a conversation may be

admitted into evidence in a federal prosecution. 18 U.S.C. §§ 2511(2)(c) and 2517(3), taken together, specifically authorize the admission into evidence of warrantless recordings of this type.

*Id.* at 52; *see also United States v. Infelice*, 506 F.2d 1358, 1365 (7th Cir.1974) (citing §§ 2511(2)(c) and 2517(3) in support of a holding that tapes made by a government informant were admissible), *cert. denied*, 419 U.S. 1107, 95 S.Ct. 778, 42 L.Ed.2d 802 (1975); *United States v. Upton*, 502 F.Supp. 1193, 1199 (D.N.H.1980) ("Read, as they must be, together, 18 U.S.C. § 2511(2)(c) and § 2517(3) specifically authorize the admission into evidence of recordings of this type.").

■ The Court agrees that the phrase "intercepted in accordance with the provisions of this chapter" in § 2517(3) clearly contemplates interceptions of consensual recordings made in accordance with § 2511(2)(c) or (2)(d). In other words, consensual recordings that are made under color of law or without a criminal or tortious purpose are recordings made "in accordance with" Title III. Accordingly, the Court holds that § 2517(3) controls the disclosure of the recordings of wire communications made by Whitacre.

Reaching this conclusion, however, provides, at best, only a small piece of the statutory puzzle. ADM argues that even assuming the tapes made by Whitacre of phone conversations were lawfully made pursuant to § 2511(2)(c) or (2)(d), § 2517(3) prohibits their disclosure in civil cases in which the Government is not a party. In *In re Motion to Unseal Electronic Surveillance Evidence*, 990 F.2d 1015 (8th Cir.1993) (en banc) (7–5 decision), which is the principal case relied upon by ADM, the Eighth Circuit held that there is no authority in Title III for pretrial or compelled testimonial disclosure of sealed electronic surveillance evidence to a private civil RICO litigant. *Id.* at 1020. The *Electronic Surveillance* majority stated that while the argument for dis-

closure to private civil litigants based on the language of § 2517(3) has "surface plausibility", there is no indication in the legislative history that Congress ever intended to open the discovery door in Title III to private civil litigants:

As originally enacted, section 2517(3) provided for courtroom testimonial disclosure only in criminal proceedings.... With the passage of RICO in 1970, Congress amended the wiretap statute to allow for testimonial use in civil proceedings as well. Organized Crime Control Act of 1970, Pub.L. No. 91–542, § 902(b), 84 Stat. 922, 947 (1970). In support of his argument that the statute now authorizes pretrial discovery, Smith cites cases in which wiretap evidence has been used by an agency other than that which initially sought the wiretap. For example, Smith cites to cases in which the Internal Revenue Service obtained wiretap evidence from the FBI for use in civil prosecutions. Such cases provide no authority for disclosure, pretrial or otherwise, to a private civil litigant.

The legislative history of the 1970 amendment adds little support to Smith's argument. As the district court noted, the legislative history merely indicates the obvious, that the change "amends 18 U.S.C. 2517 to permit evidence obtained through the interception of wire or oral communications under court order to be employed in civil actions." The language of this brief commentary suggests, however, that Congress envisioned the gatherer of such evidence, *i.e.,* a law enforcement or governmental investigative agency, to be the party making use of the evidence in a civil case. *If the change had been intended to open the door to private civil litigants, further comment would have been warranted.*

*Id.* at 1018–19 (emphasis added).

The *Electronic Surveillance* court is not alone in its holding. In *National Broadcasting Co. v. United States Dep't of Justice,* 735 F.2d 51 (2nd Cir.1984), the Sec-

ond Circuit held that NBC was not entitled to surveillance tapes made by the DOJ. NBC's alleged need for the tapes at issue arose out of a libel suit brought against NBC by Wayne Newton. Since the issue of falsity was at the center of the libel action, NBC sought permission to inspect and copy for use in its defense various materials surrounding and including interceptions made by the Government in a related RICO criminal case. In pursuing this information, NBC relied upon § 2517(3), and like the party that sought interceptions in *Electronic Surveillance, supra,* NBC relied upon the 1970 amendments to Title III which expanded § 2517(3) to include civil proceedings. The Second Circuit rejected this argument, stating, "[W]e are sure that Congress did not utilize a provision of the Organized Crime Control Act [of 1970] to make the fruits of wiretapping broadly available to all civil litigants who show a need for them." *NBC,* 735 F.2d at 54; *see also County of Oakland v. City of Detroit,* 610 F.Supp. 364, 370 (E.D.Mich.1984) (same).

While this Court respects the decisions of the Second and Eighth Circuits, and gives substantial deference to them, it is not bound by them. Section 2517(3) unambiguously states that the contents of lawful interceptions may be disclosed "while giving testimony under oath or affirmation *in any proceeding held under the authority of the United States* or of any State or political subdivision thereof." (Emphasis added) If Congress intended to limit disclosure of contents of interceptions to cases in which the Government is a party, it chose the wrong language to do so. The phrase "in any proceeding held under the authority of the United States" is not limiting in nature and includes a private, civil antitrust action brought under the Sherman Act, which is a proceeding held under the authority of this United States district court.

ADM, however, argues that even if § 2517(3) facially permits disclosure in civ-

il litigation in which the Government is not a party, § 2517(3) does explicitly not allow for pre-trial discovery of the wire interceptions. For this proposition, ADM cites the cases of *County of Oakland, supra*, 610 F.Supp. at 370–71, and *Dowd v. Calabrese*, 101 F.R.D. 427, 435 (D.D.C.1984) (disclosure of interceptions can be made only during the testimony of a Government agent). In *Dowd*, for example, two Assistant U.S. Attorneys brought libel actions against the Wall Street Journal ("the Journal") for a story that asserted that the attorneys improperly pressured an individual into testifying at a criminal trial. The Journal filed motions to compel which sought disclosure of two wiretap tapes. The Journal claimed that the tapes would support the truthfulness of its story. A portion of these tapes were presented during the criminal trial. The *Dowd* court ruled that the Journal was entitled to the portions of the tapes which were made public. As to the remaining tapes, the court stated, "There are several problems with this request. In the first place, section 2517(3) of Title III . . . explicitly provides for disclosure only 'while [the individual is] giving testimony under oath or affirmation.' . . . That is not what is involved here." *Id.* at 435. The *Dowd* court took the position that disclosure of the wiretap materials not presented in a trial cannot be required pursuant to pre-trial discovery subpoenas.

Admittedly, § 2517(3) does not explicitly authorize pre-trial disclosure of the contents of wire interceptions. On the one hand, pre-trial disclosure seems implicit if such interceptions can be used "in any proceeding held under that authority of the United States. . . ." § 2517(3). On the other hand, by permitting disclosure of lawfully obtained intercepts "only under the specific circumstances listed in 18 U.S.C. § 2517, *Title III implies that what is not permitted is forbidden . . . .*" *United States v. Dorfman*, 690 F.2d 1230, 1232 (7th Cir.1982) ("*Dorfman II*") (emphasis added).

▮ So, the Court is faced with a statutory quagmire. The broad language "in *any* proceeding held under the authority of the United States" clearly contemplates use of interceptions in civil litigation even when the Government is not a party. On the other hand, the phrase preceding this broad language—"while giving testimony under oath or affirmation"—does not contemplate the type of pre-trial discovery sought by Plaintiffs of the interceptions made by Whitacre of telephone conversation. Plaintiffs asserted during oral argument that the initial disclosure of the wire interceptions from the DOJ to the parties could occur by way of deposition or affidavit, which would, perhaps, technically meet the "under oath or affirmation" requirement of § 2517(3). However, testimony or affidavits are one thing, but turning over the interceptions of the telephone conversations is something else.

Again, the Court fully recognizes the conflict between its conclusions with respect to § 2517(3)—the language contemplates use at trial but does not address pre-trial discovery. Whether Congress intended such a result, the Court can only guess. However, this Court must be guided by the words used by Congress and the precedent that establishes that what is not permitted under § 2517 is forbidden.[2]

As a final comment on this issue, it is the Court's belief that Congress needs to clarify the language in § 2517. In fact, the other statutory issues addressed in this Order point to a need for Congressional review of this statute. While judges are correctly admonished to refrain from rewriting legislation, we are sometimes forced to interpret legislation that is contradictory or ambiguous.

---

**2.** Because the Court has held that the contents of the interceptions of wire communications are not discoverable during pre-trial proceedings, the parties agree that there is not a need for any further hearing at this time to determine whether the interceptions were lawfully made pursuant to § 2511(2)(c) or (2)(d).

## IV. Special Master

◼ ADM argues that it is likely that there are portions of the face to face recordings which are irrelevant to the issues in this litigation and, therefore, this Court should appoint a special master to review the tapes and recommend to the Court which portions of the tapes, if any, should be redacted prior to the tapes being provided to Plaintiffs. The Court, while not unsympathetic to ADM's arguments denies this request.

There is already in place in this case the First Addendum to the Protective Order of May 2, 1996, which restricts the availability of the tape recordings to specified attorneys for Plaintiffs and Defendants ADM, Cargill, A.E. Staley Manufacturer, and American Maize Products Company (now known as Cerestar USA, Inc.). (*See* Doc. # 279, First Addendum to the Protective Order of May 2, 1996). After Defendants have reviewed the tapes ordered to be turned over and have identified which portions they believe to be irrelevant to this case and the tag-along case of *Gray & Co. v. ADM, et al.*, they may seek relief from this Court in the form of redacting the alleged irrelevant portions of the tapes if they are unable to reach an agreement with Plaintiffs.

The parties are in a much better position than a special master would be in of determining what information from the tapes is relevant to this case. This is true even if the Court and the parties were to give a special master a crash course on a case that is nearing the four year mark.

Accordingly, the request for a special master is denied.

### Conclusion

For the reasons stated herein, ADM's Motion to Quash or, in the Alternative, to Modify Plaintiffs' Subpoena is GRANTED IN PART and DENIED IN PART and Randall's Motion to Intervene and to Quash Class Plaintiffs Subpoena Duces Tecum is GRANTED IN PART and DENIED IN PART.

Those tape recordings made by or with the consent of Whitacre of conversations at which he and the other person or persons being recorded were physically present shall be turned over to Plaintiffs and Defendants. Plaintiffs and Defendants shall handle the tapes in accordance with the First Addendum to the Protective Order of May 2, 1996. Randall's attorney, Jeffrey Cole, shall also be allowed to review those portions of the face to face recordings to which Randall was a party. Prior to reviewing the tapes, however, Mr. Cole shall read the Protective Order of May 2, 1996 and the First Addendum to the Protective Order, sign a copy of the certificate attached as Exhibit B to the First Addendum, and return the certificate to this Court. The Clerk of the Court shall send a copy of the Protective Order and First Addendum (Doc. Nos. 98 and 279) via first class mail to Mr. Cole. He shall review the tapes at the law firm of Williams & Connolly, which is the law firm that, pursuant to paragraph four of the First Addendum to the Protective Order, is designated as the custodian of tapes for the single copy provided to Defendants.

The interceptions of telephone conversations made by or with the consent of Whitacre are not discoverable.

Lastly, the Court denies ADM's request to appoint a special master.

### Supplement to Order

Upon consideration of Defendant Archer Daniels Midland Company's ("ADM") Application for Certification Pursuant to 28 U.S.C. § 1292(b) and Class Plaintiffs and Plaintiff Gray & Company's respective Cross–Applications for Certification Pursuant to 28 U.S.C. § 1292(b), and there being good cause shown to grant the Applications, the Court certifies this Order under 28 U.S.C. § 1292(b). The Court is of the opinion that the Order involves the following controlling questions of law as to which there are substantial grounds for difference of opinion, and that an immediate appeal from the Order may materially ad-

vance the ultimate termination of this litigation:

1. Does the recording of a face-to-face communication by, or with the consent of, a party to the communication take the conversation outside the scope of 18 U.S.C. § 2510(2), which defines "oral communication," so that the recording is lawful under Title III without regard to:

(a) whether the communication was recorded by "a person acting under color of law" (*see* 18 U.S.C. § 2511(2)(c)); or

(b) whether, if not recorded by a person acting under color of law, the recording was made "for the purpose of committing any criminal or tortious act" (*see* 18 U.S.C. § 2511(2)(d))?

2. Are consensual recordings made pursuant to 18 U.S.C. § 2511(2)(c) or (2)(d) exempt from the mandates of 18 U.S.C. § 2517?

3. If consensual recordings made pursuant to 18 U.S.C. § 2511(2)(c) or (2)(d) are not exempt from the mandates of 18 U.S.C. § 2517, does § 2517(3) authorize the disclosure and use of such recordings in civil cases to which the Government is not a party? and

4. If 18 U.S.C. § 2517(3) authorizes the disclosure and use of tapes of consensual recordings made pursuant to 18 U.S.C. § 2511(2)(c) or (2)(d) in civil cases to which the Government is not a party, does § 2517(3) permit disclosure of such tapes during discovery in response to a subpoena, or does it instead restrict disclosure to testimony given at trial?

The conflicting and ambiguous statutory provisions discussed in this Order, as well as the uncertain state of the case law, create substantial ground for difference of opinion. *See, e.g., ante,* at 829 (noting "the apparent conflict between § 2510(2) and §§ 2511(2)(c) and (2)(d)"); *ante,* at 829–30 (noting this Court's disagreement with the decisions of the Second and Eighth Circuits). Moreover, the questions are "con-

trolling" under 28 U.S.C. § 1292(b) because their resolution "is quite likely to affect the further course of the litigation." *Sokaogon Gaming Enterprise Corp. v. Tushie–Montgomery Assoc., Inc.,* 86 F.3d 656, 659 (7th Cir.1996).

As previously noted by the Court in the Order, the DOJ, the recipient of Plaintiffs' subpoena, has represented that just under 200 recordings are involved. This is plainly a case in which "interlocutory reversal may save time for the district court, and time and expense for the litigants." *Johnson v. Burken,* 930 F.2d 1202, 1206 (7th Cir.1991) (citation and internal quotation marks omitted). For example, if the court of appeals were to disagree with this Court's resolution of both the first and third issues set forth above, it would then be unnecessary to incur the time and expense of examining a variety of issues which are otherwise likely to result in this trial (e.g., redactions, reliability, authenticity).

As a final comment, the Court briefly addresses Plaintiffs' argument that the first issue set forth above should not be certified for interlocutory appeal. Plaintiffs argue that this issue has already been resolved by the Seventh Circuit in *John Doe Trader, supra.* Although the Court relied on *John Doe Trader* in resolving the first issue, the apparent conflict between the definition of "oral communication" in § 2510(2) and the exceptions found in §§ 2511(2)(c) and (2)(d) to Title III's prohibition against intercepting oral communications was not addressed by the *John Doe Trader* Court. Accordingly, the Court rejects Plaintiffs argument that the first issue should not be certified under 28 U.S.C. § 1292(b) for interlocutory appeal.