**ARCHER DANIELS MIDLAND COMPANY, a Delaware Corporation, Plaintiff,**

v.

**Mark W. WHITACRE, Defendant.**

**No. 96–CV–2237.**

United States District Court, C.D. Illinois, Danville/Urbana Division.

Aug. 5, 1999.

See also 39 F.Supp.2d 1048; 46 F.Supp.2d 819.

Laurie S. Fulton, Williams & Connolly, Washington, DC, A. James Shafter, Kehart, Shafter & Webber, Decatur, IL, for Plaintiff.

Bill T. Walker, Law Offices of Bill T. Walker, Granite City, IL, for Defendant.

## ORDER

McCUSKEY, District Judge.

This case is before the court for ruling on two Motions filed by Plaintiff, Archer Daniels Midland Company (ADM), a Motion for Summary Judgment (# 137) and a Motion to Stay (# 159). Following careful review, ADM's Motion for Summary Judgment (# 137) is GRANTED in part and DENIED in part. In addition, ADM's Motion to Stay proceedings regarding Count VII of its Amended Complaint (# 159) is GRANTED. ADM's request to voluntarily dismiss Count IV of its Amended Complaint is GRANTED. This court is also providing notice to ADM that it intends to dismiss Counts V and VI of ADM's Amended Complaint for the reasons stated in this Order. ADM is allowed fourteen (14) days to file any objections to the dismissal of Counts V and VI. See *Stewart Title Guar. Co. v. Cadle Co.*, 74 F.3d 835, 836–37 (7th Cir.1996).

## FACTS

Defendant, Mark W. Whitacre, began his employment with ADM on November 13, 1989. He was originally vice-president of ADM BioChem. ADM BioChem was later named ADM BioProducts Division. In May 1990, Whitacre was promoted to president of ADM BioProducts Division, which produces lysine. In November 1992, Whitacre became a corporate vice-president of ADM. Also in November 1992, Whitacre began taping conversations at

ADM. The recordings were turned over to the FBI to be used in its investigation into allegations of price-fixing of lysine. On June 27, 1995, the FBI raided ADM's corporate headquarters. On August 7, 1995, Whitacre's employment was terminated. Whitacre was informed by letter that he was being terminated "for cause, including the theft of at least $2.5 million from the Company."

ADM filed its original Complaint against Whitacre on September 19, 1996, in the circuit court of Macon County. In its 39-page complaint, ADM alleged that Whitacre unlawfully obtained over $9.5 million from ADM during his employment with ADM. In Count I, ADM claimed that Whitacre was liable for the breach of fiduciary duties. In Count II, ADM alleged that Whitacre was liable for conversion. In Count III, ADM alleged that Whitacre was liable for fraud. In Count IV, ADM sought an accounting and the imposition of a constructive trust. In Count V, ADM sought a declaratory judgment that Whitacre continues to be obligated pursuant to the Non–Disclosure Agreement signed during his employment and that Whitacre is barred from disclosing information described within the Non–Disclosure Agreement. In Count VI, ADM named various individuals allegedly involved with Whitacre in unlawfully obtaining money from ADM as Respondents in Discovery. ADM requested that they be required to participate and respond to discovery in this case.

Whitacre removed the action to this court on October 17, 1996, on the basis of diversity of citizenship (28 U.S.C. § 1332) as Whitacre was then a resident of North Carolina. On November 22, 1996, Whitacre filed an Answer to the Complaint and a Counterclaim. In his Counterclaim, Whitacre sought damages from ADM for: (1) retaliatory discharge following his co-operation with the FBI in its investigation into price-fixing (Count I); (2) breach of contract (Count II), based upon ADM's breach of three stock option agreements; (3) intentional infliction of emotional distress (Count III); and (4) five counts of defamation (Counts IV, V, VI, VII and VIII).

On January 9, 1997, ADM filed its Complaint in Case No. 97–2005 against many of the individuals named as Respondents in Discovery. This case has recently been settled by all of the parties, and an Order dismissing the case was entered by this court on July 14, 1999.

On October 10, 1997, Whitacre pleaded guilty to 37 counts of an indictment charging him with wire fraud, interstate transportation of stolen property, conspiracy to defraud the United States, money laundering and filing false Income Tax returns. On March 4, 1998, Whitacre was sentenced to 108 months' incarceration and was ordered to pay ADM $11,403,698 in restitution.

On July 21, 1998, this court granted ADM's motion to amend its Complaint and add Count VII, alleging that Whitacre violated Federal wiretapping statutes (18 U.S.C. §§ 2511(1), 2512(1)) and Count VIII, alleging that Whitacre violated Illinois' eavesdropping statute (720 Ill. Comp. Stat. 5/14–2 (West 1996)). Whitacre filed his Answer to these additional counts on August 14, 1998.

ADM filed a Motion for Summary Judgment (#137) on September 10, 1998. ADM also filed a Statement of Undisputed Facts, a lengthy Memorandum in Support of the Motion and three volumes of exhibits. In its Motion, ADM sought a judgment in its favor on Counts I, II, III, V, VII and VIII of its Amended Complaint. ADM also sought a judgment in its favor and against Whitacre on all counts of Whitacre's Counterclaim.

On September 17, 1998, following a jury trial before United States District Judge Blanche M. Manning, Whitacre and ADM executives Michael D. Andreas and Terrance S. Wilson were found guilty of conspiring to fix the global price and allocate the sales volume of lysine. See *United States v. Andreas,* 39 F.Supp.2d 1048, 1054 (N.D.Ill.1998). On December 16, 1998,

Whitacre filed his Response to the Motion for Summary Judgment.

ADM filed a Motion to Stay (# 159) on April 7, 1999. ADM noted that United States District Judge Michael M. Mihm entered an Order in *In re High Fructose Corn Syrup Antitrust Litigation,* 46 F.Supp.2d 819 (C.D.Ill.1999). According to ADM, this Order related to the same tapes at issue in Count VII of ADM's Amended Complaint. ADM stated that an appeal from Judge Mihm's Order would be filed. ADM argued that it would serve judicial economy to stay resolution of its Motion for Summary Judgment regarding Count VII pending the disposition of the forthcoming appeal. Whitacre has not responded to the Motion to Stay.

Whitacre was sentenced by Judge Manning on July 9, 1999. He was sentenced to a term of 30 months in prison, 20 months to be consecutive to the sentence previously imposed by Judge Baker. *United States v. Andreas,* 1999 WL 515484, at *17 (N.D.Ill.1999).

## ANALYSIS

### I. SUMMARY JUDGMENT STANDARD

This court first notes that ruling on ADM's Motion for Summary Judgment has been complicated by Whitacre's failure to comply with the Central District of Illinois' Local Rules. Local Rule 7.1(D)(2) provides:

> Similar to answering a complaint, in response the party opposing the summary judgment, shall file a *separate* document (entitled "Response to statement of Undisputed Facts") which *numerically* responds to each of the movant's undisputed facts. The party will either *admit* or *contest* the fact. If the fact is contested, the party (1) shall submit a short and plain statement of why the fact is in dispute and (2) cite to discovery material or affidavits that support the contention that the fact is disputed. (Emphasis in original.)

In this case, Whitacre was allowed numerous extensions of time in which to file his Response to the Motion for Summary Judgment. In fact, the Response was filed more than three months after the Motion was filed. Nevertheless, Whitacre did not comply with the requirements of Local Rule 7.1(D). In the Response, Whitacre merely listed the numbers of Plaintiff's Undisputed Facts which he contested. He provided *no* statement of why any of the facts were in dispute and *no* citation to discovery material or affidavits. In addition, Whitacre has provided this court with little reasoned analysis explaining why summary judgment should not be granted.

■ The Seventh Circuit has repeatedly upheld the strict enforcement of the local rules and has sustained the entry of summary judgment when the non-movant fails to submit a factual statement in the form required by the local rules. *Columbia Pictures Indus., Inc. v. Landa,* 974 F.Supp. 1, 3 (C.D.Ill.1997) (citing *Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 922 (7th Cir.1994)). However, strict enforcement of the local rules does not mean that a party's failure to comply with the rules automatically results in summary judgment for the moving party. *LaSalle Bank Lake View v. Seguban,* 54 F.3d 387, 392 (7th Cir.1995). It remains "the movant's burden to demonstrate that no genuine issue of material fact exists and that he is entitled to summary judgment as a matter of law." *Doe v. Cunningham,* 30 F.3d 879, 883 (7th Cir.1994). Accordingly, the district court must make the further finding that summary judgment is proper as a matter of law. *LaSalle Bank,* 54 F.3d at 392. "Where the evidentiary matter in support of the motion [for summary judgment] does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented." *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 160, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) (quoting the Advisory Committee Note on the 1963 Amendment to subdivision (e) of Rule 56 of the Federal Rules of Civil Procedure); see also *Wienco, Inc. v. Katahn Assocs., Inc.,* 965 F.2d 565, 568 (7th Cir.1992).

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); see also *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In ruling on a motion for summary judgment, a district court has one task and one task only: to decide, based upon the evidence of record, whether there is any material dispute of fact that requires a trial. *Waldridge*, 24 F.3d at 920. Neither the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment. *Hoffman v. MCA, Inc.*, 144 F.3d 1117, 1121 (7th Cir.1998).

## II. ADM'S CLAIMS FOR DAMAGES

In Counts I, II and III of its Amended Complaint, ADM seeks damages from Whitacre for breach of fiduciary duty, fraud and conversion. ADM has provided detailed documentation of fraudulent transactions engaged in by Whitacre during his employment with ADM. This court concludes that ADM has presented more than sufficient evidence to establish that Whitacre engaged in fraudulent transactions, beginning in 1991 and continuing into 1995, which caused ADM to pay a total of $9,538,694 for services it never received. Indeed, on October 10, 1997, Whitacre pleaded guilty to 37 counts of the indictment against him based upon the fact that he engaged in these transactions. On March 4, 1998, when he was sentenced for those crimes, he was ordered to pay restitution to ADM in the total amount of $11,403,698. This figure was the total of $9,538,694, the amount of the documented fraudulent transactions, and $1,865,004 in interest.

Based upon the facts submitted by ADM, and Whitacre's guilty plea, this court concludes that ADM is clearly entitled to summary judgment on Counts I, II

and III of its Amended Complaint. See *Northwestern Neurosurgical Assocs., S.C. v. Esteves*, 1996 WL 164390, at *2–5 (N.D.Ill.1996). ADM is seeking an award of damages based upon these Counts in the total amount of $6,327,017.52. This amount is the total of the $9,538,694 ADM lost due to the fraudulent transactions, $1,174,167.52 to reimburse ADM for the salary and benefits paid to Whitacre, prejudgment interest, minus $8,074,851.29 recovered by ADM from Whitacre and his co-conspirators.

■ Whitacre argues that an award of damages would be improper because he has already been ordered to pay restitution. However, Whitacre's plea agreement specifically provided that it did not bar or compromise any civil claim pending against Whitacre. Further, ADM has pointed out that it is not seeking a double recovery. ADM has subtracted from the damages requested all amounts recovered from Whitacre and others. This court agrees with ADM that the restitution order does not preclude a judgment for damages in the case at hand.

■ Here, in this case, ADM has requested damages which were not included in the restitution order. In addition to the amount ADM lost due to the fraudulent transactions, ADM is also seeking reimbursement of the salary and benefits paid to Whitacre from May 1, 1991 through August 7, 1995, the date of his termination. The law provides that a fiduciary employee is entitled to compensation only "on a due and faithful performance" of all his duties. *Levy v. Markal Sales Corp.*, 268 Ill.App.3d 355, 205 Ill.Dec. 599, 643 N.E.2d 1206, 1220 (1994) (quoting *ABC Trans Nat'l Transport, Inc. v. Aeronautics Forwarders, Inc.*, 90 Ill.App.3d 817, 46 Ill.Dec. 186, 413 N.E.2d 1299, 1314–15 (1980)). Accordingly, employees who breach their fiduciary duties are required to forfeit all compensation received during the period of the breach. *ABC Trans*, 46 Ill.Dec. 186, 413 N.E.2d at 1314–15; see also *Vendo Co. v. Stoner*, 58 Ill.2d 289, 321 N.E.2d 1, 14

(1974), *cert den.*, 420 U.S. 975, 95 S.Ct. 1398, 43 L.Ed.2d 655 (1975); *Hill v. Names & Addresses, Inc.*, 212 Ill.App.3d 1065, 157 Ill.Dec. 66, 571 N.E.2d 1085, 1092 (1991). Whitacre has not specifically challenged this aspect of the damages sought by ADM and has not contested the amount sought for salary and benefits.

This court previously concluded the evidence that Whitacre defrauded ADM of over $9.5 million was sufficient to show that he breached his fiduciary duty to ADM. This court therefore finds that ADM is entitled to recover salary and benefits paid to Whitacre in the amount of $1,174,167.52. Accordingly, this court now enters judgment in favor of ADM and against Whitacre on Counts I, II and III of ADM's Amended Complaint in the total amount of $6,327,017.52.

In its Motion for Summary Judgment, ADM states that it "voluntarily dismisses" Count IV of the Amended Complaint. This court will construe this statement as a request for an Order dismissing Count IV pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure. Accordingly, Count IV is hereby dismissed.

In addition, in Count VI of its Complaint, ADM only named various individuals as Respondents in Discovery and requested that they be required to participate and respond to discovery in this case. After Count VI was filed, ADM filed Case No. 97–2005 against many of the Respondents in Discovery. That case was recently settled and dismissed. Moreover, ADM has not sought any relief based upon Count VI. Accordingly, this court now provides notice to ADM that it intends to dismiss Count VI of the Complaint with prejudice. ADM is allowed fourteen (14) days to file any objections to the dismissal of Count VI of its Amended Complaint. See *Stewart Title Guar. Co.*, 74 F.3d at 836–37.

### III. NON–DISCLOSURE AGREEMENT

In Count V of its Complaint, ADM is seeking a declaratory judgment that a Non–Disclosure Agreement entered into between ADM and Whitacre in 1989 and 1991 remains "enforceable and in full force and effect" and that Whitacre "is lawfully barred from disclosing information described within the Non–Disclosure Agreement." Under the terms of the Non–Disclosure Agreement, Whitacre agreed "not to use or disclose to any person, firm or corporation, at any time, either during [his] employment with the Company or thereafter, ... any trade secret or confidential information of the Company, whatsoever."

█ There does not appear to be any dispute between the parties that Illinois law applies to the construction of the Non–Disclosure Agreement in this diversity case. Non-competition and non-disclosure agreements are considered restrictive covenants. See *Label Printers v. Pflug*, 206 Ill.App.3d 483, 151 Ill.Dec. 720, 564 N.E.2d 1382, 1387 (1991), *app. denied*, 139 Ill.2d 597, 159 Ill.Dec. 109, 575 N.E.2d 916 (1991). Restrictive covenants operate at least as partial restraints of trade and must be carefully scrutinized by courts. *Corroon & Black of Illinois, Inc. v. Magner*, 145 Ill.App.3d 151, 98 Ill.Dec. 663, 494 N.E.2d 785, 791 (1986). A restrictive covenant "may be held enforceable only if the time and territorial limitations are reasonable and the restrictions are reasonably necessary to protect a legitimate business interest of the employer, *a determination which necessarily turns on the facts and circumstances of each case.*" *Label Printers*, 151 Ill.Dec. 720, 564 N.E.2d at 1387 (emphasis added); see also *Abbott–Interfast Corp. v. Harkabus*, 250 Ill.App.3d 13, 189 Ill.Dec. 288, 619 N.E.2d 1337, 1340–41 (1993). A restrictive covenant can be enforced only if the evidence shows that the confidential information sought to be protected is, in fact, confidential. *Curtis 1000, Inc. v. Suess*, 24 F.3d 941, 947–48 (7th Cir.1994); see also *North American Paper Co. v. Unterberger*, 172 Ill.App.3d 410, 122 Ill.Dec. 362, 526 N.E.2d 621, 624–25 (1988).

■ ADM is correct that, under current Illinois law, the lack of a time limitation does not automatically mean a non-disclosure agreement is void and unenforceable. *Harkabus,* 189 Ill.Dec. 288, 619 N.E.2d at 1344; see also *PepsiCo, Inc. v. Redmond,* 54 F.3d 1262, 1272 n. 10 (7th Cir.1995). However, the reasonableness and enforceability of the agreement must be determined based upon the facts of the particular case. See *Thomas & Betts Corp. v. Panduit Corp.,* 1999 WL 261861, at *2 (N.D.Ill.1999); *Harkabus,* 189 Ill.Dec. 288, 619 N.E.2d at 1340–41; *Label Printers,* 151 Ill.Dec. 720, 564 N.E.2d at 1387–88.

■ In sum, under Illinois law, a non-disclosure agreement is enforceable only if the facts show that the employer has a legitimate, protectable interest in confidential information and the restrictions imposed are reasonable. Here, however, ADM has not, in its Complaint, Motion for Summary Judgment or Memorandum in support of the Motion for Summary Judgment, provided facts to show that Whitacre has possession of any protectable confidential information. It has also not provided any facts showing that there is any danger that Whitacre, currently serving lengthy, consecutive prison terms, will disclose any such protectable, confidential information. Instead, ADM is seeking a declaratory judgment that the Agreement is enforceable and that Whitacre is barred, presumably forever, from disclosing any information described in the very broad language of the Agreement.

■ Under section 2–701 of the Illinois Code of Civil Procedure, a court may issue declaratory judgments determining the construction of contracts and other written instruments. 735 Ill. Comp. Stat. 5/2–701(a) (West 1998); *Emery Worldwide Freight Corp. v. Snell,* 288 Ill.App.3d 808, 224 Ill.Dec. 343, 681 N.E.2d 658, 659 (1997). However, a court may only make such a declaration of rights in "cases of actual controversy." 735 Ill. Comp. Stat. 5/2–701(a) (West 1998); *Greenberg v. United Airlines,* 206 Ill.App.3d 40, 150 Ill.Dec. 904, 563 N.E.2d 1031, 1037 (1990), *app.*

*denied,* 137 Ill.2d 664, 156 Ill.Dec. 561, 571 N.E.2d 148 (1991). "An actual controversy exists if there is a legitimate dispute admitting of an immediate and definite determination of the parties' rights, the resolution of which will aid in the termination of the controversy or some part thereof." *Greenberg,* 150 Ill.Dec. 904, 563 N.E.2d at 1037–38; see also *Illinois Gamefowl Breeders Ass'n v. Block,* 75 Ill.2d 443, 27 Ill.Dec. 465, 389 N.E.2d 529, 531 (1979). A court will not render a judgment based on mere abstract propositions of law, render an advisory opinion or give legal guidance regarding future events. *Greenberg,* 150 Ill.Dec. 904, 563 N.E.2d at 1038 (citing *Stone v. Omnicom Cable Television of Illinois, Inc.,* 131 Ill.App.3d 210, 86 Ill.Dec. 226, 475 N.E.2d 223, 227 (1985) (in order to obtain declaratory judgment, a plaintiff must plead a demonstrable protected interest and that his or her rights will be affected adversely by the defendant's actions)); see also *CGE Ford Heights, L.L.C. v. Miller,* 306 Ill.App.3d 431, 239 Ill.Dec. 477, 485, 714 N.E.2d 35, 43 (1999) ("a plaintiff must show that the underlying facts and issues of the case are not moot, hypothetical or premature, so as to require the court to give legal advice about future events").

■ Here, ADM has alleged no present harm that will continue without the court's intrusion (see *Greenberg,* 150 Ill. Dec. at 911, 563 N.E.2d at 1038) and is essentially seeking legal guidance regarding potential (although unlikely) future events. ADM has not alleged or shown an actual controversy regarding the construction of the Non–Disclosure Agreement. A court must avoid issuing a declaratory judgment where there is no actual controversy ripe for decision but where the outcome of other cases may be influenced by the judgment. See *Matter of VMS Securities Litigation,* 103 F.3d 1317, 1327 (7th Cir.1996). If no actual controversy exists, the declaratory judgment action is properly dismissed. *Greenberg,* 150 Ill.Dec. at 911, 563 N.E.2d at 1038; *Outboard Ma-*

*rine Corp. v. James Chisholm & Sons, Inc.*, 133 Ill.App.3d 238, 88 Ill.Dec. 336, 341–343, 478 N.E.2d 651, 656–58 (1985). In fact, the appropriate method for declining to grant declaratory relief is to dismiss the action. *Lihosit v. State Farm Mut. Auto. Ins. Co.*, 264 Ill.App.3d 576, 201 Ill. Dec. 193, 196, 636 N.E.2d 625, 628 (1993).

ADM relies heavily on *PepsiCo, Inc.* and *Corroon & Black* as supporting its claim for relief in this case. In *PepsiCo, Inc.*, the Seventh Circuit affirmed an injunction granted by the district court prohibiting a former employee from disclosing trade secrets and confidential information. *PepsiCo, Inc.*, 54 F.3d at 1272. However, in that case, the former employer presented evidence of a number of trade secrets and confidential information it desired protected and to which the former employee, who had been offered a job with a competitor, was privy. See *PepsiCo, Inc.*, 54 F.3d at 1265. In *Corroon & Black*, an employer sued a former employee who left to work for a competitor and solicited the employer's customers. The Appellate Court reversed the circuit court's summary judgment in favor of the employee. The Court concluded that genuine issues of material fact existed regarding whether the former employer had a protectable proprietary interest in its customers so that the restrictive covenant signed by the employee was enforceable. *Corroon & Black*, 98 Ill.Dec. at 670–71, 494 N.E.2d at 792–93. Neither case, however, involved a declaratory judgment action. More importantly, in both cases cited by ADM, facts were presented showing that the employer had a protectable interest in confidential information and the restrictive covenant was reasonably necessary to protect that interest. The cases cited do not support ADM's claim for a declaratory judgment under the circumstances presented in this case.

ADM has offered no facts to this court showing that the restrictions in the Non–Disclosure Agreement are reasonably necessary to protect confidential information. Consequently, this court concludes that, under Illinois law, the enforceability of the Non–Disclosure Agreement simply cannot be resolved in the abstract. Accordingly, it is clear that ADM is not entitled to summary judgment on Count V of its Amended Complaint. In fact, this court concludes that Count V of ADM's Amended Complaint does not state a claim upon which relief can be granted. Fed R. Civ. P. 12(b)(6). As a result, this court is now providing notice to ADM that it intends to dismiss Count V of ADM's Amended Complaint with prejudice. ADM is allowed fourteen (14) days to file any objections to the dismissal of Count V of its Amended Complaint. See *Stewart Title Guar. Co.*, 74 F.3d at 836–37.

## IV. CLAIMS BASED UPON ALLEGEDLY ILLEGAL TAPING

■ ADM argues that Whitacre engaged in extensive secret taping of conversations with his colleagues at ADM for a period of 2½ years, from November 1992 to June 1995. ADM argues that this extraordinary invasion of privacy violated both the federal wiretapping statute and Illinois' Eavesdropping Act. This court initially notes that ADM has failed in its attempt to portray itself as the innocent victim of Whitacre's wrongdoing. This court notes that, based in part on the tape recordings made by Whitacre, ADM pleaded guilty to price-fixing and paid a fine of $100 million. See *United States v. Andreas*, 39 F.Supp.2d 1048, 1055–56 (N.D.Ill.1998). Also, as previously noted, ADM executives Michael D. Andreas and Terrance S. Wilson were both found guilty of price-fixing on September 17, 1998. Andreas and Wilson were each sentenced to two years in prison on July 9, 1999. See *Andreas*, 1999 WL 515484, at *15.

In addition, Whitacre contends that ADM is "not entitled to declaratory relief nor an injunction prohibiting dissemination of the tapes or their contents." This court finds that this point is well taken. Moreover, the court notes that ADM submitted a proposed Order to this court with its Motion for Summary Judgment. The pro-

posed Order includes the following language:

> The Court ENJOINS Mark E. Whitacre, his agents, his servants, his employees, his attorneys, and any person in active concert or participation with him or them who receives actual notice of this order, from using, disclosing, or divulging or endeavoring to use, disclose, or divulge the tapes make by Whitacre of internal ADM conversations, copies of the tapes, information stored on the tapes or copies thereof, or any information derived directly or indirectly from the tapes. The Court further commands Mark E. Whitacre, his agents, his servants, his employees, his attorneys, and any person in active concert or participation with him or them who receives actual notice of this order, to deliver any tapes, copies of the tapes, or other documents or things containing any intercepted information to the Court for placement under seal or destruction.

The court reminds ADM that Whitacre is the only party defendant in this action. Therefore, the court only has jurisdiction over the parties to this action, which are ADM and Whitacre.[1] It seems unlikely that Whitacre, now serving consecutive prison terms of 108 months and 20 months, retains possession of any of the tape recordings. In fact, based upon case law provided to this court by ADM, the tape recordings made by Whitacre: (1) were used in the criminal trial of *United States v. Andreas*, 39 F.Supp.2d 1048 (N.D.Ill.) and are already part of the public record; or (2) are in the custody of the Department of Justice. *In re High Fructose Corn Syrup Antitrust Litigation*, 46 F.Supp.2d 819, 821 (C.D.Ill.1999). Obviously, the order proposed by ADM is inappropriate based upon the facts presented and will not be entered by this court.

This court further notes that it has reservations about whether declaratory relief is appropriate regarding these counts of ADM's Amended Complaint. It is certainly questionable in this case whether an "actual controversy" regarding the tapes exists between ADM and Whitacre, based on the situation where it appears that Whitacre does not have either possession or control over the tape recordings. This court reminds ADM that any relief granted will be narrowly tailored to the parties to this case and any actual controversy between them.

## A. FEDERAL LAW

ADM first contends that it is entitled to relief because Whitacre's taping violated Title III of the Omnibus Crime Control and Safe Streets Act of 1968 (18 U.S.C. § 2510 et seq.) (Title III). Section 2511 of Title III provides that any person who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication ... shall be subject to suit as provided in subsection (5)." 18 U.S.C. § 2511(1). However, § 2511 also provides:

> (c) It shall not be unlawful under this chapter for a person acting under color of law to intercept a wire, oral, or electronic communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception.

> (d) It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State. 18 U.S.C. § 2511(2)(c),(d).

---

1. On April 14, 1998, the United States was allowed to intervene in this action for the limited purpose of staying the depositions of all current or former Government personnel until the completion of the trial in *United States v. Andreas,* No. 96 CR 762 (N.D.Ill.).

■ ADM first contends that Whitacre violated Title III because he was not acting under color of law when he recorded the conversations. However, it is undisputed that the taping began in November 1992, when Whitacre agreed to cooperate with the FBI, and ended in June 1995, when the FBI raided the corporate headquarters of ADM. There does not seem to be any dispute that the tape recordings were turned over to the FBI and are currently in the custody of the Department of Justice.

ADM relies on very selective excerpts from the transcript of the criminal trial before Judge Manning and some factual findings made by Judge Manning. Judge Manning denied a pre-trial motion to suppress the audiotapes made by Whitacre and allowed the Government to use the tapes at trial. See *Andreas*, 39 F.Supp.2d at 1057; *United States v. Andreas*, 1998 WL 214666, at *6 (N.D.Ill.1998). However, Judge Manning did conclude, based upon the evidence before her, that the FBI's handling of Whitacre's tape recordings "was not the FBI's finest hour." *Andreas*, 39 F.Supp.2d at 1057. The evidence showed that Whitacre failed two polygraph examinations in December 1992 and March 1993, early in the FBI's investigation. See *Andreas*, 39 F.Supp.2d at 1055. Nevertheless, the FBI gave Whitacre discretion to decide which conversations to tape and did not follow FBI policy on recording. *Andreas*, 1998 WL 214666, at *5; see also *United States v. Andreas*, 23 F.Supp.2d 835, 849–50 (N.D.Ill.1998). The evidence showed that there were often long gaps of time between when the conversations were recorded and the time when the FBI took possession of the recordings. *Andreas*, 1998 WL 214666, at *5. Further, a tape expert testified that the tapes showed signs of tampering and erasure. *Andreas*, 1998 WL 214666, at *5. At the close of the covert investigation, the government discovered that Whitacre was secretly embezzling money from ADM by completing bogus invoices for payment. *Andreas*, 1998 WL 214666, at *1. The government considered this a violation of Whitacre's coopera-

tion agreement and subsequently indicted Whitacre for embezzlement and the lysine price-fixing conspiracy. *Andreas*, 1998 WL 214666, at *1.

■ ADM contends that this evidence shows that Whitacre's taping of internal ADM conversations was not a "joint activity" with law enforcement and that he was not acting "under color of law" when he taped the conversations. This court recognizes that the phrase "under color of law" in Title III is narrower than "under color of state law" in the Civil Rights Act. *Thomas v. Pearl*, 998 F.2d 447, 450–51 (7th Cir.1993), *cert. denied*, 510 U.S. 1043, 114 S.Ct. 688, 126 L.Ed.2d 655 (1994). However, this court concludes that recording conversations for law enforcement officers gathering evidence against suspected criminals is "under color of law" pursuant to Title III. See *Thomas*, 998 F.2d at 451. Here, Whitacre met frequently with FBI agents and turned the tape recordings over to the FBI. This court finds that the evidence regarding the FBI's mishandling of the investigation is not sufficient to show, as a matter of law, that Whitacre was not acting "under color of law" when the recordings were made.

Further, Title III allows one party to a conversation to record the conversation unless his purpose in doing so is to commit a crime or a tort. *Desnick v. American Broad. Co.*, 44 F.3d 1345, 1353 (7th Cir. 1995); see also *Russell v. American Broad. Co.*, 1995 WL 330920, at *1–2 (N.D.Ill.1995). ADM insists that Whitacre's purpose in recording the conversations was to divert the FBI from discovering his fraudulent transactions and thefts from ADM. As evidence, ADM has submitted a portion of the transcript of Whitacre's deposition. At the deposition, Whitacre was asked if it was true that his taping operation would make it less likely that the government would discover his financial crimes. Instead of answering the question, Whitacre invoked the Fifth Amendment. This is not sufficient to establish, as a matter of law, that Whitacre's

main purpose in recording conversations for 2½ years was to divert the FBI from discovering his thefts from ADM. See *United States v. Andreas,* Case No. 96–CR–762 (October 24, 1997) (unpublished order), slip op. at 16–21.

This court concludes that ADM has fallen short of establishing that no genuine issue of material fact exists regarding whether Whitacre's actions in taping conversations violated Title III. Accordingly, ADM's Motion for Summary Judgment as to Count VII of its Amended Complaint is DENIED.

ADM has also filed a Motion to Stay regarding Count VII of its Amended Complaint based upon Judge Mihm's ruling in *In re High Fructose.* That case is now on appeal. In *In re High Fructose,* Plaintiffs in a class action antitrust case involving ADM were seeking to obtain, during discovery, all recordings made by or with the consent of Whitacre during the FBI's investigation. On January 22, 1999, the Department of Justice agreed to produce approximately 200 tapes which were not introduced in the *Andreas* criminal trial. ADM moved to quash the subpoena seeking the disclosure of these tapes. ADM argued, as it has in this court, that Whitacre's taping violated Title III. *In re High Fructose,* 46 F.Supp.2d at 821. ADM also argued that, even if the tapes were lawfully made, Title III does not permit the disclosure of the tapes in an action in which the Government is not a party. *In re High Fructose,* 46 F.Supp.2d at 821.

Judge Mihm first concluded that all of the "face to face" recordings made by Whitacre were not recordings of "oral communications" as defined by Title III and could be turned over to Plaintiffs. *In re High Fructose,* 46 F.Supp.2d at 824–28. Judge Mihm then discussed whether the interception of telephone calls by Whitacre could be disclosed in the litigation. Judge Mihm determined that the telephone conversations were "wire communications" as defined by Title III. Judge Mihm assumed, for purposes of his analysis, that Whit-

acre's interception of the wire communications was lawful under Title III. *In re High Fructose,* 46 F.Supp.2d at 828. However, Judge Mihm determined that the wire communications were not discoverable by Plaintiffs under Title III. *In re High Fructose,* 46 F.Supp.2d at 831. Judge Mihm certified the Order pursuant to 28 U.S.C. § 1292(b), stating that the Order involved controlling questions of law as to which there are substantial grounds for difference of opinion and that an immediate appeal from the Order may materially advance the ultimate termination of the litigation. *In re High Fructose,* 46 F.Supp.2d at 832–33. The Seventh Circuit recently entered an Order granting permission to appeal the certified question in *In re High Fructose.*

Here, in this case, in its Motion to Stay, ADM argued that the "result of the forthcoming appeal from Judge Mihm's Order is likely to determine the law governing the 'oral communication' element of ADM's Title III claim in this case. Accordingly, it would serve the interests of judicial economy for this Court to stay consideration of Count VII pending the disposition of the appeal." Whitacre did not file a response or objection to ADM's Motion to Stay. This court has already concluded in this Order that ADM is not entitled to Summary Judgment on Count VII of its Amended Complaint. However, the court agrees with ADM that the ruling of the Seventh Circuit may have some bearing on the resolution of Count VII of the Amended Complaint. Therefore, ADM's Motion to Stay (# 159) is GRANTED, and further proceedings regarding Count VII of the Amended Complaint are stayed pending a resolution of the appeal from Judge Mihm's decision in *In re High Fructose.*

## B. ILLINOIS LAW

▮ ADM also argues that Whitacre's actions violated the Illinois Eavesdropping Act (Act). The Act provides that a person commits the offense of eavesdropping when he "[u]ses an eavesdropping device

to hear or record all or any part of any conversation unless he does so ... with the consent of all of the parties to such conversation." 720 Ill. Comp. Stat. 5/14–2(a) (West 1998). However, the Illinois Supreme Court held that no violation of the Act occurred if a party to the conversation recorded the conversation. *People v. Beardsley,* 115 Ill.2d 47, 104 Ill.Dec. 789, 503 N.E.2d 346, 349–52 (1986); see also *People v. Herrington,* 163 Ill.2d 507, 206 Ill.Dec. 705, 645 N.E.2d 957, 958–59 (1994). The Court reasoned that "no eavesdropping occurs where an individual to whom statements are made or directed records them, even without the knowledge or consent of the person making the statements, because the declarant does not intend to keep his statements private vis-a-vis that individual." *Herrington,* 206 Ill. Dec. 705, 645 N.E.2d at 958–59. Because of the Illinois Supreme Court's decisions, the Illinois General Assembly amended the Act, effective December 15, 1994, to provide that, "[f]or the purposes of this Article, the term conversation means any oral communication between 2 or more persons regardless of whether one or more of the parties intended the communication to be of a private nature under circumstances justifying that expectation." 720 Ill. Comp. Stat. 5/14–1(d) (West 1998).

The Illinois Supreme Court has not reviewed the language of the amended statute. Other courts have construed the amended statute to extend the coverage of the eavesdropping law to all conversations, regardless of whether they were intended to be private. *Carothers v. Starbucks Coffee Co.,* 1998 WL 325262, at *7 (N.D.Ill. 1998) (citing *People v. Siwek,* 284 Ill. App.3d 7, 219 Ill.Dec. 444, 671 N.E.2d 358, 362–63 (1996)). However, the amended statute applies only to taped conversations occurring after December 15, 1994, the effective date of the amendment. *Carothers,* 1998 WL 325262, at *8; *Talanda v. KFC Nat'l Management Co.,* 1997 WL 160695, at *6 n. 6 (N.D.Ill.1997), *aff'd,* 140 F.3d 1090 (1998), *cert. denied,* — U.S. ——, 119 S.Ct. 164, 142 L.Ed.2d 134 (1998). Consequently, Whitacre, who was

a party to the conversations he was recording, could not have violated the Act prior to December 15, 1994. See *Carothers,* 1998 WL 325262, at *8. Accordingly, only recordings made between December 15, 1994, and June 1995 could have been made in violation of the Act.

■ In addition, this court notes that ADM is not seeking damages for any violation of the Act by Whitacre. Instead, ADM is seeking declaratory and injunctive relief under the Act. However, the Act provides that a person injured by a violation of the Act is entitled to various types of damages (720 Ill. Comp. Stat. 5/14–6(1)(b),(c),(d)(e) (West 1998)) or "an injunction by the circuit court prohibiting further eavesdropping by the eavesdropper and by or on behalf of his principal" (720 Ill. Comp. Stat. 5.14–6(1)(a) (West 1998)). Based upon section 14–6 of the Act, the only remedy available to ADM is an injunction prohibiting Whitacre from any further eavesdropping. This court believes that, because Whitacre will be incarcerated for many years, further eavesdropping by Whitacre is highly unlikely. As a rule, federal courts do not enjoin conduct which has been discontinued and has no real prospect of repetition. *Wilson v. Hart,* 47 F.Supp.2d 966, 970 (N.D.Ill. 1999). Accordingly, ADM's Motion for Summary Judgment on Count VIII of its Amended Complaint is DENIED.

## V. WHITACRE'S COUNTERCLAIMS

In Count I of Whitacre's Counterclaim, he alleges that his discharge for theft was "pretextual" and that his employment was actually terminated because he acted as a whistleblower and exposed ADM's involvement in price-fixing. ADM argues that "[a]fter pleading guilty to 37 felonies related to his fraudulent transactions, being sentenced to 108 months in prison, and being ordered to pay restitution to ADM in the amount of $11,403,698, Whitacre's claim that his dismissal for theft was 'pretextual' ... is preposterous." This court agrees. Consequently, summary judg-

ment is granted in ADM's favor on Count I of Whitacre's Counterclaim. In addition, Whitacre has not argued that there are any issues of material fact precluding judgment for ADM on Counts III, IV, V, VI, VII and VIII of his Counterclaim. Instead, in his Response, Whitacre states that he "voluntarily dismisses" these Counts. However, this court concludes as a matter of law that there are no genuine issues of material fact remaining in these Counts. Thus, ADM is entitled to summary judgment on Counts III, IV, V, VI, VII and VIII of Whitacre's Counterclaim.

■ The court now turns to Count II of Whitacre's Counterclaim against ADM. In Count II of his Counterclaim, Whitacre alleged that ADM breached three stock option agreements entered into by the parties during Whitacre's employment. ADM admits that, on the date Whitacre's employment was terminated, it canceled Whitacre's right to exercise any portion of the stock options. However, ADM contends that it is entitled to summary judgment on this Count because ADM's performance under the terms of the agreements is excused by Whitacre's material breach of his employment obligations. ADM also argues that these stock option agreements should be considered "compensation" which, as discussed previously, Whitacre forfeited based upon his breach of fiduciary duty. ADM has presented compelling and persuasive arguments. But the court in resolving this issue must carefully examine the language of the agreements.

All three agreements provide as follows:

The Company hereby *irrevocably* grants to the Employee, as a matter of separate agreement, and not in lieu of salary or other compensation for services, the right and option ... to purchase [a specified number of shares of stock]. (Emphasis added.)

In addition, the agreements all state, in pertinent part:

In the event the employment of the Employee by the Company or by a parent or subsidiary corporation of the Company shall terminate *for any reason*

..., the Employee may, within one month following the date of such termination, exercise the Option but only with respect to the shares of Stock purchasable thereunder at the time of such termination. (Emphasis added.)

Accordingly, based upon the clear language of the agreements, ADM irrevocably granted the options to Whitacre, and Whitacre had the right to exercise the options within one month if his employment was terminated for any reason. Therefore, even though Whitacre's employment was terminated based upon his theft from ADM, this court concludes that a genuine issue of material fact exists regarding whether ADM breached the stock option agreements. Accordingly, ADM's Motion for Summary Judgment as to Count II of Whitacre's Counterclaim is DENIED.

IT IS THEREFORE ORDERED THAT:

(1) ADM's Motion for Summary Judgment (# 137) is GRANTED as to Counts I, II and III of ADM's Amended Complaint. Judgment is entered in favor of ADM and against Whitacre in the amount of $6,327,-017.52.

(2) ADM's Motion for Summary Judgment (# 137) is DENIED as to Counts V, VII and VIII.

(3) ADM's Motion for Summary Judgment (# 137) is GRANTED as to Counts I, III, IV, V, VI, VII and VIII of Whitacre's Counterclaim. ADM's Motion for Summary Judgment is DENIED as to Count II of Whitacre's Counterclaim.

(4) ADM's Motion to Stay proceedings on Count VII of its Amended Complaint (# 159) is GRANTED pending a ruling from the Seventh Circuit in *In re High Fructose Corn Syrup Antitrust Litigation,* 46 F.Supp.2d 819 (C.D.Ill.1999).

(5) ADM's request to voluntarily dismiss Count IV of its Amended Complaint is GRANTED. In addition, this court has found in this Order that Count V of the Amended Complaint does not state a claim

for declaratory judgment upon which relief can be granted. Also, ADM has not requested any relief pursuant to Count VI of it Amended Complaint. ADM is hereby notified that this court intends to dismiss, with prejudice, Counts V and VI of the Amended Complaint. ADM is allowed fourteen (14) days to file any objection to the dismissal of Counts V and VI.

(6) Count VIII of ADM's Amended Complaint and Count II of Whitacre's Counterclaim remain pending and have not been stayed. A telephone status conference regarding the Counts still pending in this action is set for Friday, August 27, 1999, at 3:30 p.m.